## ALICE R. HOLLAND et al., Appellants, v. BOGARDUS-HILL DRUG COMPANY et al.

In Banc, May 21, 1926.

1. **WILL: Life Tenant: Power to Mortgage: Annulment of Lease.** Where the life tenant did not mortgage, sell, give away or devise the property, it is immaterial whether the will gave her power to mortgage. But where she preserved the property for the remaindermen it is of some importance to observe, in determining the validity of a lease for a term of years made by her before her death, that the lease was of benefit to the remaindermen; that one consideration for the lease was an expensive repair of the premises; that as a result of said improvements the present rental value of the property has greatly increased, and that the remaindermen's action to annul the lease is brought for the obvious reason that the rental value has greatly increased since the lease was executed and the improvements were made by the tenant in pursuance to its terms.

2. ———: **Lease by Life Tenant: Annulment after Her Death: Intention: Statute.** The testator by his will devised real estate to his wife "to be used and enjoyed by her during her natural life," imposing on her the duty to "care for, maintain, support and educate our minor children" and empowering "her, if she deem it best, to sell any real estate and convey to the purchaser the fee title absolute" and "to use, dispose of and enjoy the property for herself and her family while she lives just as I should have power to use,

(214)

dispose of and enjoy it during my life for the use of myself and family did I survive her;" after the death of the wife "all the property remaining shall be divided equally among my children;" and the widow was appointed executrix and "it is my express wish and request that she be permitted to execute this trust without giving the statutory bond." The will was executed in 1890, and testator died in 1893, and in 1919 the widow executed a lease for a term ending in 1931, and she died in 1923, eight years before the expiration of the demised term. The lease provided for a monthly rental of $250, and the lessee was required to make repairs on the property by 1921 to the extent of $3,000, and he actually expended $5,000 in making improvements. After her death, the remaindermen brought ejectment against the lessee, and at the trial it was proven that the rental value was then over $500 per month. *Held*, that the testator had he survived would have had power to execute a lease for twelve years, extending beyond the time of his death, and by the will he gave to his widow the same power; that the widow was authorized by the provisions of the will to execute a lease extending beyond the time of her death; that she acted intelligently and with fidelity in the discharge of her trust; that her conduct in preserving the property for the benefit of the remaindermen is worthy of the highest commendation, and was in keeping with the intention of the testator; that to hold otherwise would be to ignore the plain intention of testator and the plain provisions of the statute (Sec. 555, R. S. 1919) which requires all courts to "have due regard to the directions of the will, and the true intent and meaning of the testator;" and that the lease cannot be annulled.

*Held*, by WHITE, J., dissenting, first, that the will gave the real estate and personal property to testator's wife, "to be used and enjoyed by her for and during her natural life," and that limitation cannot be construed to authorize a lease by her extending beyond her death; *second*, that the will gave to "said wife power and control of all my said property so long as she may live, to collect all debts which may be due to me, to collect all my personal assets of whatever kind, use them as she may see fit in support and maintenance of herself and our children, and reinvest any money which may come to her and which may not be needed for the support of herself and family, in any manner she may think proper" and "I empower her if she may deem it best to sell any real estate" and to reinvest the proceeds "as she may think best in other real estate or personal property," thereby separating the real estate and personal property, and this distinction is overlooked in the majority opinion, which applies to real estates language which the testator intended to apply only to personal property; *third*, the final sentence of the clause that it is "my intention by this will to empower my

said wife to use, dispose of and enjoy the property for herself and family while she lives as I would have power to use, dispose of and enjoy it during my life did I survive her" was simply a summary of his intention as theretofore expressed, and simply gave her power to use, dispose of and enjoy "while she lives," and did not confer upon her power to dispose of it after her death; and, *fourth*, the majority opinion ignores the words "while she lives" and in effect holds that she had power to lease the property for any number of years after her death, even ninety-nine years, and contradicts the plain intention expressed in the first words of the clause that the property was given to her "to be used and enjoyed by her for and during her natural life."

3. ———: **Power to Use and Dispose Of.** The power invested by a will in the life tenant and executrix "to use and dispose of" property is broader than the mere power to sell. Where the testator by his will empowered his wife, to whom was expressly given a life estate, to sell any part of his estate, and "to use, dispose of and enjoy the property for herself and her family while she lives just as I should have power to use, dispose of and enjoy it during my life for the use of myself and family, did I survive her" he intended to grant to her unlimited power to deal with the property, and to do with it whatever he could have done with it, if living, for the benefit of herself and children, and if any of it were left at her death it was to go to his children, and not by gift or will to another; and a lease, executed by her, for a term of years, which did not expire until eight years after her death, and which included, as a part of the consideration, in addition to the rental to be paid, the expenditure of a large sum of money in repairing and improving the property, was for the benefit of the children, who were the remaindermen, and is binding on them.

*Held*, by WHITE, J., dissenting, that the words "dispose of," as used in the phrase quoted, did not mean absolute disposition of the real estate and consumption of the *corpus*; but meant that testator's wife could dispose of it as previously stated, and emphasized her limited power to dispose of it by using the words "while she lives." She could dispose of it for a period coterminous with her life, but no longer; she could lease it "while she lives" or use it "while she lives," but could not lease it for a term extending beyond her death.

Corpus Juris-Cyc. References: Estates, 21 C. J., Section 100, p. 964, n. 7. Wills, 40 Cyc., p. 1624, n. 90; p. 1830, n. 15.

Appeal from Greene Circuit Court.—*Hon. Orin Patterson,* Judge.

AFFIRMED.

*Mann & Mann* and *V. O. Coltrane* for appellants.

(1)   A case almost identical with this is Price v. Courtney, 87 Mo. 387.   This court then held that the will gave the trustee no power to mortgage or encumber the property and hence that the deed of trust was void and that the words in the latter portion of the will, to-wit: "It is my desire that in and about the entire management of my said property, the said Courtney should have the full power to do with the same as I would, were I living," though very broad, are not to be construed as any additional grant of power, but as only referring to the power of sale previously granted.   Price v. Courtney, 87 Mo. 387.   The law is exceedingly strict in requiring a precise compliance with the direction of the donor in exercising the power to cut out remaindermen, that is to say, in exercising powers in gross which are such as the donee can create, but will not attach on the interest limited to the donee or take effect out of the donee's interest.   General words, after specific powers granted, must be confined to things *ejusdem generis* with those preceding them.   Where certain powers are clearly prescribed by the language of the will the donee or trustee is not at liberty to assume other powers, for by prescribing one the others are negatived.   A general clause which is indefinite in its character will be restricted and limited to estates and things of the same nature and description as those previously mentioned. Garland v. Smith, 164 Mo. 1; Miller v. Wagenhauser, 18 Mo. App. 11.   It will also be noticed that the widow may do this "while she lives," implying a limitation of the power to her lifetime.   (2)   In some cases it has been held that a court of equity has the power to authorize the trustee to execute a lease for a period exceeding the lim-

itation in the will. Such principle, however, has no bearing upon the facts in this case, as no authority of a court of equity was asked or obtained. In such cases courts of equity proceed upon the theory that it is necessary for the preservation of the property or for effectuating the intention of the testator to authorize the trustee to execute a lease extending beyond the probable duration of the trust. In this case there was no exigency rendering the execution of such lease necessary. Such lease, not being necessary for the preservation of the property or for the effectuation of the intention of the testator, cannot be sustained as a matter of necessity. St. Louis U. Tr. Co. v. Van Raalte, 259 S. W. 1067. (3) The words "after the death of my said wife I desire all the property remaining derived from me shall be divided equally among my children" show that the testator intended to give his wife only a life estate with remainder over absolutely to his children. Schorr v. Carter, 120 Mo. 409; Dunbar v. Sims, 283 Mo. 361. (4) The lease in controversy was executed on May 8, 1919, to begin *in futuro,* to-wit, on June 1, 1919, for a period of twelve years and seven months, ending on December 31, 1931. If Mrs. Robberson had the power to make this lease *in futuro,* she had the power to make other and additional leases to commence at fixed dates in the future without end, which would be, in effect, creating a perpetuity, something that is not favored by the law and in the absence of clear power to do so will not be upheld. A general power to lease only authorizes a lease in possession and not *in futuro.* A lease made to commence only one day after the date of the instrument creating it is as fatal a variance from the general power to make a lease as if it had been made to take effect at the expiration of one hundred years thereafter. Taussig v. Reel, 134 Mo. 530. (5) As Mrs Robberson only took a life estate, she could not defeat the remaindermen in any way except that expressly authorized. If we concede that the last sentence in the second clause of the will has operative words sufficient

to create a power, yet this sentence only provides that she may use, dispose of and enjoy the property while she lives. This confers the largest liberty in the use of the property while she lives, but the opening sentence of the next clause provides that at her death the property remaining shall be equally divided among the children. She had only a life estate with the power to sell, and with that life estate and with the power to sell she could do as she pleased, but her life estate and her power to sell ceased at her death, and the remainder passed to the testator's children or their descendants, who were equally with herself the objects of the testator's bounty. Riggins v. McClellan, 28 Mo. 23. (6) The recital at the end of the second clause of the will does not contain operative words which are necessary to vest an estate or grant a power. The intention of the testator must be ascertained from the language used, what the testator actually said, and not from what one might conjecture that he meant to say. Ashbaugh v. Ashbaugh, 273 Mo. 353. Recitals of desire or intention may be useful in resolving doubts in other parts of the will, but they do not amount to a testamentary disposition. 40 Cyc. 1404; Clark v. Post, 113 N. Y. 17; 34 Cyc. 532. (7) Unless conferred expressly, or by necessary implication, the owner of a life or other limited estate has no power to grant leases binding upon the remainderman or reversioner; nor does a power to lease include a power to sell. 31 Cyc. 1085. Nor does a power to sell include the power to lease. 31 Cyc. 1081. (8) A life tenant without the consent of the remaindermen has no power to lease or encumber land beyond the period of his life, and any lease or incumbrance terminates *ipso facto* on his death. Matlack v. Kline, 190 S. W. 408; Matlack v. Kline, 280 Mo. 139. (9) Upon the death of the life tenant the lease terminates, although the term for which it was made has not expired unless made under a power, and the lease then becomes void, and is not even capable of confirmation by the remaindermen. Sutton v. Hiram Lodge, 6 L. R. A. 703; Hooglan v. Crum, 55

Am. Rep. 424; Avery v. Hoyencamp, 189 S. W. 917; Edgehill v. Mankey, 11 L. R. A. (N. S.) 688; Guthman v. Vallery, 66 Am. St. 475; Barson v. Mulligan, 90 N. E. 127; Hines v. McCombs, 58 S. E. 1124; Saunders v. Sutlire, 174 N. W. 267.

*Alfred Page, W. P. Lyons* and *O. E. Gorman* for respondents.

(1) The controlling rule in construing wills in this State, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator. R. S. 1919, sec. 555; Gannon v. Pauk, 200 Mo. 75; Murphy v. Carlin, 113 Mo. 112; Tisdale v. Prather, 210 Mo. 402; Grace v. Perry, 197 Mo. 550. (2) In arriving at the true intent of the testator, his relation to the beneficiaries named in the will, the nature of the property disposed of, and circumstances surrounding him at the time are to be taken into consideration, and the will is to be read from the testator's standpoint, and effect given, if possible, to every clause and portion of it. Cases supra: In re Tinsley, 174 N. W. 4; Murphy v. Clancy, 177 Mo. App. 429. (3) To give the will the construction contended for by appellants, that is, that it gives to his widow a life estate only with power to sell and convey, would require that the true intent and meaning of the testator as shown by various parts of his will, and especially the last sentence in Paragraph 2, must be totally disregarded and ignored. Griffin v. Nicholas, 224 Mo. 275; Archer v. Palmer, 112 Ark. 527; Underwood v. Cave, 176 Mo. 17; Mitchell v. Morrisville College, 305 Mo. 474; Payne v. Reece, 297 Mo. 60. (4) By the use of the words "dispose of," "use," "empower," "enjoy" and "control" the testator gave to his widow much greater authority over his estate than the mere power to sell. The words "dispose of" are sufficiently comprehensive in their meaning to include every possible mode of alienation or disposition of property. Missionary Society v. Wadhams, 10 Barb. 597. They

include the power to lease. Hill v. Summers, 132 U. S. 118; United States v. Gratiot, 39 U. S. 526; Gould v. Head, 41 Fed. 240; Benz v. Fabian, 35 Atl. 760. They also have been construed to confer the power to barter and exchange. Trust Co. v. McGovern, 297 Mo. 527; Phelps v. Harris, 101 U. S. 380. The word "use" is construed to confer the right to sell and use the proceeds for support and comfort. Board of Trustees v. Dimmitt, 113 Mo. App. 41; McGuire v. Gallager, 99 Me. 344; Trustees Presbyterian Church v. Mize, 181 Ky. 567.. And the words "dispose of" have been construed to confer the right to make a lease terminating after the death of the life tenant. Wolf v. O'Brien, 121 N. E. 368; Hedges v. Riker, 5 John. Chan. (N. Y.) 163; In re Upham, 152 Wis. 270; Trigg v. Trigg, 192 S. W. 1014. (4) Price v. Courtney, 87 Mo. 387, is not in point, either in fact or in principle. The facts are different in that the will in the Price case creates a trust with the naked power to sell and convey. Dr. Robberson's will confers upon the widow not only the right to sell, but the right to "use, dispose of and enjoy." The Price will refers only to the management and control of the estate, which could not in any manner be construed to be a disposition of it. These words do not call into operation the statute (R. S. 1919, sec. 555), nor the many decisions of the courts of this State to the effect that the intent of the testator as gathered from the whole will must control. Trigg v. Trigg, 192 S. W. 1014; Andrews v. Auditor, 5 Ohio Dec. 242. (5) The contention of appellants that the lease in question is void because executed to begin *in futuro,* in support of which they cite Taussig v. Reel, 134 Mo. 530, is untenable for three reasons. (a) Mrs. Reel's authority to lease was conferred by contract, which limited her authority to lease to a term of fifteen years. (b) There was no limit placed by the will upon Mrs. Robberson's right to dispose of the property. (c) The lease was executed only 22 days before it was to take effect. Consent to sub-let was executed only

ten days before the term began. United States v. Noble, 237 U. S. 74, 59 Law Ed. 844.

RAILEY, C.—This is an action in ejectment for a lot in the city of Springfield, Missouri, on which there is a two-story building. The case was tried by the court, judgment rendered for defendants, and plaintiffs appealed.

Appellants claim the right to possession of the property in controversy as remaindermen under the will of Edwin T. Robberson, deceased, who was the common source of title. Defendants claim possession of said property by virtue of a lease executed in her lifetime by Elizabeth J. Robberson, who was the widow of said Edwin T. Robberson. The latter died the 10th day of November, 1893, in Greene County, Missouri, leaving a will, dated January 18, 1890, which was duly probated in said county on November 23, 1893. Elzabeth J. Robberson, the widow, died at the age of eighty-six years on August 31, 1923. Four of the plantiffs are children of Dr. Edwin T. Robberson. The other plaintiffs are the heirs and devisees of the three *deceased* children.

On May 8, 1919, Elizabeth J. Robberson, the widow, executed a lease of said property to the Royal Company, a Delaware corporation, for a period of twelve years and seven months, to commence the first day of June, 1919, and ending on December 31, 1931. On May 21, 1919, Mrs. Robberson, consented to an amendment to said lease, providing that the lessee therein might sub-let said premises or any part thereof. On October 16, 1922, for a recited consideration of one dollar, Mrs. Robberson consented that the Royal Company might assign said lease to Thomas H. Hooper, Jr. The Royal Company, through its president and secretary, assigned said lease to Thomas H. Hooper, Jr. On October 30, 1922, said Thomas H. Hooper, Jr., in consideration of said assignment, assumed, and agreed in writing to make all the payments and perform all the covenants and con-

ditions called for in said lease. The latter provided for the payment of $250 per month as rent to be paid in advance during the period aforesaid. It further provided that the lessee should keep the building in good repair and expend $3,000 in improving the building on or before January 1, 1921, at the cost of lessee. It appears from the evidence that the lessee expended about $5,000 in improvments on the property.

The will is dated January 18, 1890, and the second paragraph of same reads as follows:

"II. All the rest and residue of my property and estate of whatsoever kind, real, personal and mixed, I give, devise and bequeath to my dearly beloved wife, Elizabeth J. Robberson, to be used and enjoyed by her for and during her natural life. I have faith and confidence in my said wife that she will care for, maintain, support and educate our minor children if any there be at my death, as I myself would do if life were preserved to me. And I do therefore give to my said wife power and control of all of my said property so long as she may live, to collect all debts which may be due to me, collect all my personal assets of whatsoever kind, use them as she may see fit in support and maintenance of herself and our children, and reinvest any money which may come to her and which may not be needed for the support and maintenance of herself and family, in any manner she may think proper, and I empower her if she may deem it best to sell any real estate of which I may die seized and to convey to the purchaser thereof the fee title absolute and the proceeds arising from such sale, to re-invest as she may think best in other real estate or personal property. It being my intention by this will to empower my said wife to use, dispose of and enjoy the property I may leave for herself and her family while she lives just as I should have power to use, dispose of and enjoy it during my life for the use of myself and family did I survive her."

The third paragraph of said will provides that:

"After the death of my said wife I desire all the property remaining derived from me shall be divided equally among my children," etc.

The seventh paragraph of the will is as follows:

"I do hereby appoint my wife Elizabeth J. Robberson sole executrix of this my last will and testament and it is my express will and request that she be permitted to execute this trust without giving the statutory bond thereto required."

The evidence tends to show that the fair rental value of the property at the date of trial in September, 1924, was $515 per month. It does not appear from the evidence that $250 per month, with the added obligation to keep the building in good repair and expend $3,000 in improving the building before January 1, 1921, was not a fair rental value in October, 1922, when the lease was assigned to Hooper, nor does it appear from the evidence that on the date of the lease in May, 1919, the rental value of said premises was in excess of the $250 per month.

Over the objection of plaintiffs, Mr. T. E. Whitlock, who had been in the real estate business at Springfield, Missouri, for about thirty years, and who represented the Royal Company in obtaining said lease, testified that in his opinion a lease of said property could not have been made to advantage for a short term, such as two or three years, but could have been leased more advantageously for a longer term.

The will in controversy was executed January 18, 1890. The testator died November 10, 1893. The widow, Elizabeth J. Robberson, died at the age of eighty-six years, on August 31, 1923. The will was probated in Greene County, Missouri, November 23, 1893. The lease to the Royal Company was dated May 8, 1919. The property in controversy was sub-let by the Royal Company to Thomas H. Hooper, Jr., October 30, 1922.

Plaintiffs contend that the will in controversy gave the widow a life estate, with power to sell and convey any real estate she might think best, but did not give

her the power to lease the property for a period extending beyond the time of her life. Defendants contend that the will gave the widow not only the power to sell, but the power to lease said property, as was done by the widow, extending the same beyond the period of her lifetime.

I.   It is contended by appellants that the provisions of the will in controversy are insufficient under the law to sustain the lease read in evidence, which extended beyond the lifetime of the widow. In considering this subject, it would serve no useful purpose to call into requisition the numerous decisions of our various courts in dealing with common-law principles relating to powers and the execution of same, for the obvious reason that the law-making power of our State has marked out a line of construction which should be followed in passing upon the issue which now confronts us in this case.

*Construction of Will.*

Section 555, Revised Statutes 1919, reads as follows: ''All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them.''

In addition to above statute, Judge LAMM in Eckle v. Ryland, 256 Mo. l. c. 453, has well said: ''The tendency of modern decisions on questions of contingent and vested remainders, has been more and more to break away from the technical refinements of the old common-law learning.''

We think it manifest from the provisions of the will heretofore quoted, that Mrs. Robberson, the widow, became vested with a life estate, in the real estate in controversy, with full power of disposition during her life; and that upon the death of testator, his children became vested with an equitable estate in remainder, subject to the life estate and power of disposition given to the widow by the will. [Mitchell v. Morrisville College, 305 Mo. 466, 266 S. W. 481; Crews v. Crews, 240 S. W. l. c.

314 Mo.—15.

152; Cook v. Higgins, 290 Mo. l. c. 416, 235 S. W. 807; Dunbar v. Sims, 283 Mo. l. c. 361, 222 S. W. l. c. 839; Schneider v. Kloepple, 270 Mo. 389, 193 S. W. 834; Trigg v. Trigg, 192 S. W. l. c. 1014; Priest v. McFarland, 262 Mo. 229, 171 S. W. 62; Tallent v. Fitzpatrick and Kaiser, 253 Mo. l. c. 15; Burnet v. Burnet, 244 Mo. 491; Gibson v. Gibson, 239 Mo. 490; Edgar v. Huff, 235 Mo. l. c. 561; Grace v. Perry, 197 Mo. 550.]

It is clear from reading the foregoing authorities, that if the lease in controversy should be declared void on account of it extending beyond the lifetime of the widow, the plaintiffs, as remaindermen, would be entitled to recover possession of the real estate in controversy. On the other hand, if the lease should be upheld, the plaintiffs, as remaindermen, would not be entitled to the possession of said premises until the termination of said lease.

II.  Before coming to the consideration of the real issue in this case, it is important that we should, by the process of elimination, dispose of some questions discussed in the authorities, but which are not really present in this case.

(a)  Under a life estate like the one in controversy, the donee of the power, unless authorized by the will in terms to do so, cannot give away the property of the estate, or dispose of the same by will.  To hold

**Power to Give Away.** otherwise would, in legal effect, destroy the estate in remainder, which the testator intended for his children.  [Cook v. Higgins, 290 Mo. l. c. 416-17-18; Trigg v. Trigg, 192 S. W. l. c. 1014; Tallent v. Fitzpatrick, 253 Mo. 10; Burnet v. Burnet, 244 Mo. l. c. 506.]

(b)  It is contended by appellants that the will in controversy did not authorize the widow to mortgage

**Power to Mortgage.** the property in controversy.  Suffice it to say, that nothing of the kind was attempted by the widow.

We are referred under the above contention to the case of Price v. Courtney, 87 Mo. 387, where the executor named in the will was not the wife of testator. He was given extensive powers in dealing with the trust estate, and borrowed money from Thomson, which he attempted to secure by giving a deed of trust on a part of the trust fund. Judge RAY, on page 391, in discussing the case, said: "It is to be observed of the will under consideraton, that it nowhere, in express terms, confers any power on Courtney to mortgage or otherwise encumber the property devised to him by his testator. Nor do we think such power is to be inferred by the exercise of any reasonable implication. The power conferred by the will, whatever its extent, was a mere naked power." On page 395, Judge RAY further observes, that: "The money loaned to Courtney by Thomson was not loaned for any special purpose, nor for the purpose of removing any lien for taxes on the lands of the wards, nor did Thomson understand that it was to be so applied, nor was it thus applied."

Here then was a trustee, with a mere "naked power," making use of the trust property as mentioned. In the above case, the court was dealing with common-law principles which have no application to the facts of the present controversy. [Eckle v. Ryland, 256 Mo. 1, c. 453.] On page 394 Judge RAY quotes with approval the ruling of the Supreme Court of Massachusetts in Hoyt v. Jacques, 129 Mass. 286, l. c. 288, as follows:

"The two transactions of a sale and a mortage are essentially different. A power to sell implies that the attorney is to receive, for the benefit of the principal, a fair and adequate price for the land; a power to mortgage involves a right in the attorney to convey the land for a less sum, so that the whole estate may be taken on a foreclosure for only a part of its value. So, under a will, a trust with a power to sell, prima-facie, imports a power to sell 'out and out,' and will not authorize a mortgage, unless there is something in the

will to show that a mortgage was within the intention of the testator.''

It may be truly said that property mortgaged by the widow, under a foreclosure proceeding, might be lost to the remaindermen, yet that principle of law has no application to the facts in this case, because the property was not sold, willed, given away, or mortgaged. On the contrary, it is owned by the remaindermen, with right of possession in them on the termination of the lease. In addition thereto, the rental of $3,000 per year was used by the widow during her lifetime for the support of herself and children, and these plaintiffs are the equitable owners of the rent due on said premises after the widow's death until the lease expires.

Aside from the foregoing the ruling in Price v. Courtney, 87 Mo. 387, as applied to the facts of this case, is shown to be without application in Trigg v. Trigg, 192 S. W. l. c. 1014-15, where Division One of this court had under consideration the construction of the will of George W. Trigg, deceased, made on the 16th day of August, 1883, which reads as follows:

''Second. For the purpose of supporting and maintaining my beloved wife and children, I give, devise and bequeath all my property of every kind and nature unto my beloved wife, Julia M. Trigg, with power to sell and dispose of as she may see fit and proper for the support of herself and our children, and whatever may be left of my estate at her death, if any, I desire that it shall go to my children, share and share alike. I hereby appoint my beloved wife, Julia M. Trigg, executrix of this my last will, and testament, without a bond to be given by her.''

We properly held, that the above quoted paragraph gave to Julia M. Trigg a life estate in all of testator's property, at the time of his death, with power to sell and dispose of same in accordance with the terms and provisions of the will; and whatever was left at her death, if anything, was to be equally divided between her three children aforesaid. An array of authorities

was cited in support of above pronouncement of the law. The facts are fully set out in the opinion, and indicate that after testator's death the testatrix, or widow, lived with her son, the plaintiff, who was the head of the family. It became necessary from time to time for plaintiff to advance money to his mother for the benefit of the widow and children, until the amount advanced by plaintiff for their support and maintenance equaled to or exceeded the value of the land, which the widow conveyed to plaintiff in payment of the above advancements. The plaintiff brought suit to quiet the title to said land and made certain remaindermen defendants. The lower court sustained plaintiff's theory, and rendered judgment in his behalf for the land. The case was well tried before an able judge, and elaborate briefs were filed in the Supreme Court, supplemented by oral arguments on each side. The judgment below was affirmed after a full consideration of the case. In disposing of the Trigg case on pages 1014-15 of 192 S. W. we said:

"It has long been the law in this State that, in construing wills, the courts should have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them. [Sec. 583, R. S. 1909.] While performing the solemn duty of executing his will, the testator evidently realized that, if he should pass away during the minority of these helpless children, the duty would devolve upon some one to support and maintain them during this period. His mind very properly reverted to his wife as being the most suitable person to fill this important position. The language used in said instrument indicates that he had the utmost confidence in her and made his will accordingly. He gave to her all of his property, without requiring a bond, 'with power to sell and dispose of as she may see fit and proper for the support of herself and children,' etc. He did not require her to sell the property for cash, but left her untrammeled, to dispose of it, in some other way, if she saw fit to do so, in carrying out the provisions of the will. If the income from

his estate should prove to be insufficient to enable her to support and maintain herself and children, it is manifest that he must have expected her, in some manner, to realize from the property that which was necessary to cover the deficiency of income, and, in so doing, to use her best judgment.

"But it is insisted by appellants that when Mrs. Trigg, after her husband's death, came face to face with this proposition, her only alternative was to sell the property for cash, even at a sacrifice, if necessary, in order to raise adequate means for the support and maintenance of herself and children. We are not favorably impressed with this contention, as applied to the facts presented in the record before us. It would have been unbusiness like for testator, in providing for the support and maintenance of his wife and three small children, to have arbitrarily required that his property should be sold for cash, although there might be no demand for it, and the property sacrificed thereby.

"Suffice it to say, testator took no such narrow view of the situation as that contended for by appellant. He neither required, nor expected her, to sell for cash, if in her judgment she saw fit to pursue a different course, in complying with the provisions of the will. She was not authorized to give the property away, nor to dispose of it in any other manner than that provided for in the will. The property was not given away, but disposed of in accordance with the plain provisions of the will. We are of the opinion that, under the broad power conferred by said instrument, she would have been authorized to borrow the necessary funds for the purposes aforesaid, and to have secured the same by deed of trust on the property in controversy. In other words, the language aforesaid conferred upon the widow the right to sell for cash, on time, or to mortgage the property, in order to raise the necessary funds for the support and maintenance of herself and children. The conclusion, thus reached, is supported by the great weight of modern authority. [2 Perry on Trusts (6 Ed.) sec. 768, p.

1272.; 9 Am. & Eng. Ency. Law (2 Ed.) p. 540; Ironside v. Ironside, 150 Iowa, l. c. 632, 130 N. W. 414; Waterman v. Baldwin, 68 Iowa, l. c. 260, 26 N. W. 435; Connely v. Putnam, 51 Tex. Civ. App. 233, 111 S. W. 164; Andrew v. Auditor, 5 Ohio N. P. l. c. 128; Kent v. Morrison, 153 Mass. l. c. 140, 26 N. E. 427, 10 L. R. A. 756, 25 Am. St. 616; Jackson v. Everett, 58 S. W. l. c. 342; McCreary v. Bomberger, 151 Pa. 323, 24 Atl. 1066, 31 Am. St 760; Am. H. M. Soc. v. Wadhams, 10 Barb. (N. Y.) 597; Benz v. Fabian, 54 N. J. Eq. l. c. 620, 35 Atl. 760.; Mansfield v. District Assn., 154 Cal. l. c. 147, 97 Pac. 150; Lueft v. Lueft, 129 Wis. l. c. 540, 109 N. W. 652, 7 L. R. A. (N. S.) 263, 9 Ann. Cas. 639, and cases cited; Phelps v Harris, 101 U. S. l. c. 381, 25 L. Ed. 855; Platt v. Union Pacific Railroad Co., 99 U. S. l. c. 61, 25 L. Ed. 424; Thurmond v. Faith, 69 Ga. l. c. 838.]''

The broad provisions of the will in controversy, as construed under Section 555, Revised Statutes 1919, would have warranted the widow in selling the real estate in controversy and using the proceeds for the support and comfort of herself and children, which necessarily would have destroyed the estate in remainder of the premises in dispute. But the widow did not sell, she did not mortgage said property, nor did she give it away or will it to another. On the contrary, she preserved said property for the remaindermen. She was in possession of the premises as life tenant, and had the undoubted right to lease the same during her life. She was not only a life tenant, but in possession of said property as trustee for the remaindermen, subject to the life estate and power of disposition given the widow by the will. She realized that it was her duty to rent said property upon the best terms obtainable. There being no evidence tending to show that she failed to perform her duty as a careful trustee in renting the property, it will be conclusively presumed, in this collateral proceeding, that she was guilty of no impropriety in making the lease, if she was empowered by the will to do so. [Henson v. Ry. Co., 256 S. W. l. c. 775; Pate v. Dum-

bauld, 250 S. W. l. c. 52 and cases cited; State v. Roderman, 297 Mo. l. c. 152, 248 S. W. 964; Woolridge v. La-Crosse Lumber Co., 291 Mo. l. c. 247, 236 S. W. 294; State v. McNeal, 237 S. W. 738; Wells v. Wells, 279 Mo. l. c. 69, 213 S. W. 830.]

We then have this situation, that the widow—in whom testator reposed special confidence, having appointed her as testatrix without bond, and she having been administering this estate for more than a quarter of a century without objection or criticism—was confronted with the fact that the property in controversy needed repairs. She thereupon, in the discharge of her duty, obtained the best lease possible for said property, and required the tenant to make $3,000 of repairs and pay for same. She preserved said property for these plaintiffs, for which it is claimed they could have realized over $500 per month as rental at the date of trial. In addition to the foregoing, she used the rental under said lease for the benefit of the family, and at her death the defendant was required by the lease to pay these plaintiffs $3,000 per annum during the life of the lease, which they refused to accept.

In other words, these plaintiffs occupy the unenviable position of repudiating a businesslike deal made by the mother for the benefit of the estate, as well the remaindermen, for the obvious reason that the rental value of the property increased after the execution of the lease. It is manifest that if the rental value of the property had fallen below $250 per month, we would have no preceeding of this character in court.

III. In view of what has been previously said, we deduce the conclusion: That the widow was authorized by the provisions of her husband's will, heretofore set out, to execute the lease in controversy; that she acted intelligently and with fidelity in the discharge

Power to
Lease.

of her trust, and that her conduct in preserving this property for the benefit of the remaindermen, is worthy of the highest commendation, and should be upheld.

We do not think the testator by the terms of the will aforesaid intended in legal effect to say to his widow: "You may sell the real estate in controversy, and use the proceeds for the comfort and support of yourself and children, but you cannot lease the same property beyond your lifetime for the highest rent obtainable, preserve the *corpus* of the property for the remaindermen and secure to them $3,000 per annum rent from your death to the termination of the lease."

A construction of the will as above indicated would ignore the plain provision of our statute relating to the construction of wills, do violence to the memory of testator in respect to his wife, and bestow upon these plaintiffs an advantage entirely foreign to the intention of testator as expressed in said will.

IV.   We are cited to Taussig v. Reel, 134 Mo. 530, as an authority supporting appellants' contention that the lease in controversy was void, because it was executed on May 8, 1919, to begin on June 1, 1919, for a period of twelve years and seven months, ending on December 31, 1931. The above case was an action for partition of real estate in St. Louis,   Missouri. The property had been assigned to Eugenia Reel, the widow, for life, with remainder to her three children.   The defendants claimed title under a lease made by the life tenant of the premises. On page 537, BURGESS, J., said: "The single question in controversy is whether this lease was terminated, as plaintiff contends, by the death of the life tenant, or whether such lease survived the life tenant by virtue of a certain power executed by the remaindermen in the lifetime of the life tenant, and prior to the making of said lease.   The single question then, presented in this court, involves the construction of this power."

*Taussig v. Reel Distinguished.*

In the above case, as the widow could only lease during her life, the remaindermen executed a contract giving her power to make a longer lease.   Under the power thus conferred, she undertook to make successive leases, and

this court construed the last lease. Judge BURGESS entered into an elaborate discussion of the common law, relating to the widow's power under the conveyance which the remaindermen made to her. The law as announced in above case is without application to the issues here. It was held that the remaindermen did not confer on the widow the power to make the second lease. The widow in the case before us, did not make the lease in controversy under any power conferred on her by the remaindermen, but she made the lease partly on her own account as life tenant, and as we have heretofore held, derived from the testator, through his will, the remaining power to make the lease.

V. After discussing the foregoing phases of the case, let us turn to the will itself and proceed by analysis to ascertain what powers the testator conferred on his wife by the terms of the instrument.

The Will Analyzed.

1. He made his wife executrix of his estate without her being required to give a statutory bond. 2. He placed her, at his death, in absolute control of his entire estate, and expected her to look after the education, comfort and support of the children as he would have done had he lived. Section Two of the will, divided into sections numbered one and following, reads as follows:

1. "All the rest and residue of my property" (after paying his debt and funeral expenses) "and estate of whatsoever kind, real, personal and mixed, I give, devise and bequeath to my dearly beloved wife, Elizabeth J. Robberson, to be used and enjoyed by her for and during her natural life.

2. "I have faith and confidence in my said wife that she will care for, maintain, support and educate our minor children if any there be at my death, as I myself would do if life were preserved to me.

3. "And I do therefore give to my said wife power and control of all my said property so long as she may live, to collect all debts which may be due to me, collect

all my personal assets of whatsoever kind, use them as she may see fit in support and maintenance of herself and our children.

4. "And reinvest any money which may come to her and which may not be needed for the support and maintenance of herself and family, in any manner she may think proper.

5. "And I empower her if she may deem it best to sell any real estate of which I may die seized and to convey to the purchaser thereof the fee title absolute and the proceeds arising from such sale, to re-invest as she may think best in other real estate or personal property.

6. "It being my intention by this will to empower my said wife to use, dispose of and enjoy the property I may leave for herself and her family while she lives just as I should have power to use, dispose of and enjoy it during my life for the use of myself and family did I survive her."

We think it clear, from the careful manner in which the testator has expressed himself in Paragraph Two, supra, that he did not contemplate his wife should dispose of any of his property by gift or will, as he expected it to be used during the lifetime of the wife for the convenience, comfort and support of his wife and children, and that on the death of his wife the remainder of his estate, if any were left, should go to his children, share and share alike, regard being had to advancements made, as provided in paragraph three of the will.

In the concluding portion of Paragraph Two, supra, testator empowered his wife to dispose of the property in controversy for herself and family, as he might have disposed of it for the benefit of the family had he survived her. Turning to the record, we find that the lease in question was made for the benefit of the widow and children. She did not attempt to give the property away, nor dispose of it by will. Can there be any question, as to the right of the testator to have made said lease for twelve years and seven months at $3,000 per year had he been alive? She had the legal right by

virtue of the above provision to make the lease if he could have done so, provided it was made for herself and children.

This court has expressed itself in no uncertain language, in defining the words "use" and "dispose of" in the above will as will be seen by reference to St. Louis Union Trust Co. v. MacGovern Co., 297 Mo. 1. c. 535, where SMALL, J., said: "It is a general rule that the words 'dispose of' have a broader meaning than the word 'sell,' and include the power to exchange and sell unless restricted by the context or circumstances, which cannot be soundly asserted in the case before us. [3 Words and Phrases, pp. 2117 and 2118; 2 Words and Phrases (2d Series) pp. 80 and 81; Ironside v. Ironside, 150 Iowa, 628, 130 N. W. 414, 416; Pearre & Co. v. Hawkins, 62 Tex. 434, 437; Whitfield v. Thompson, 38 So. 113-117; Williams, Lessee, v. Veach, 17 Ohio, 171, 181; Gould v. Head, 41 Fed. 240, 245; Rogers v. Goodwin, 2 Mass. 475, 477; Noyes v. Lane, 45 N. W. 327, 328; Appeal of Waddell, 84 Pa. St. 90, 96; Burr v. Boyer, 2 Neb. 265, 267; In re Hesdra's Estate, 20 N. Y. Supp. 79, 80.]"

The same principle of law is upheld in Trigg v. Trigg, 192 S. W. 1. c. 1014-15; Phelps v. Harris, 101 U. S. 380, and Hill v. Sumner, 132 U. S. 118.

A careful reading of the will clearly indicates to our minds, that testator intended to grant his widow unlimited power in dealing with said property and to allow her to do whatever he could have done, if living, provided, that the disposition of same was for the benefit of herself and children. In other words, if any of his property was left at the widow's death, he wanted it to go to his children, and not by gift or will to another.

VI. We see no reason for pursuing this inquiry further. Whether considered upon principle, or authority, the trial court reached a correct conclusion in disposing of this case. The judgment below is accordingly affirmed. *Higbee, C.,* dissents.

PER CURIAM:—This case having been transferred to Court in Banc, the foregoing opinion of RAILEY, C., in Division Two, is adopted as the decision of the court. *Blair, C. J., Walker, Atwood* and *Otto, JJ.,* concur; *Ragland, White* and *Graves, JJ.,* dissent; *White, J.,* in a separate opinion filed.

WHITE, J. (dissenting),—I dissent from the conclusion reached by Judge RAILEY in his opinion. It is unsupported by any authority, and does violence to the manifest intention of the testator.

It is conceded that a life tenant cannot make a lease extending beyond the life of the lessor, and a lease for a term of years so made expires with the death of the lessor, but the construction adopted in the opinion has precisely that unauthorized effect. Paragraph II of the will is as follows:

"A. II. All the rest and residue of my property and estate of whatsoever kind, real, personal and mixed, I give, devise and bequeath to my dearly beloved wife, Elizabeth J. Robberson, to be used and *enjoyed by her for and during her natural life.*

B. "I have faith and confidence in my said wife that she will care for, maintain, support and educate our minor children if any there be at my death, *as I myself would do* if life were preserved to me. And I do therefore give to my said wife *power and control of all my said property so long as she may live,* to collect all debts which may be due me, *collect all my personal assets* of whatsoever kind, use them as she may see fit in support and maintenance of herself and our children, and reinvest any money which may come to her and *which may not be needed* for the support and maintenance of herself and family, in any manner she may think proper;

C. "and I empower her if she may deem it best to *sell any real estate* of which I may die seized and to convey to the purchaser thereof the fee title absolute and the proceeds arising from such sale, *to re-invest as*

*she may think best in other real estate or personal property.*

D. "It being my intention by this will to empower my said wife to use, dispose of and enjoy the property I may leave for herself and her family *while she lives* just as I should have power to use, dispose of and enjoy it during my life for the use of myself and family did I survive her."

I have separated this clause by the designations A, B, C, and D, to indicate a logical classification evidently in the mind of the testator.

The next paragraph gives the remainder to the testator's children, plaintiffs here.

Paragraph VI of the will is as follows:

"VI. The devise and bequest of all my property made in this will to my wife Elizabeth J. Robberson to be used and enjoyed by her for and during her natural life is intended by me to be in lieu of dower allowed her by law in my estate."

All rules of construction, and common sense interpretation of language, show that the testator intended to give his widow a life estate only in his property. No other meaning reasonably can be extracted from it. Unless the language can be construed to authorize an absolute disposition of the real estate and a consumption of the *corpus,* the lease ended with Mrs. Robberson's life.

It must be borne in mind that the power to use and enjoy, when applied to real estate, never includes the consumption of the real estate. To use it does not mean to use it up. To use and enjoy personal property may mean its consumption. This distinction is overlooked in the opinion, and the respondents' argument mainly rests upon the application to real estate language of the will intended to apply to personal property and to give it an interpretation applicable only to personal property. Now examine each sentence and phrase of Paragraph II of the will and you will find no such authority as that claimed.

"II.   All the rest and residue of my property and estate of whatsoever kind, real, personal and mixed, I give, devise and bequeath to my dearly beloved wife, Elizabeth J. Robberson, to be used and enjoyed by her *for and during her natural life.*"

What is there in that to authorize the disposition of real estate beyond the life term? That is a general expression of the testator's desires, and he then becomes specific.

"I have faith and confidence in my said wife that she will care for, maintain, support and educate our minor children, if any there be at my death, *as I myself would do* if life were preserved to me.   And I do therefore give to my said wife *power and control of all my said property so long as she may live,* to collect all debts which may be due to me, *collect all my personal assets* of whatsoever kind, *use them as she may see fit* in support and maintenance of herself and our children, and reinvest any money which may come to her and which may not be needed for the support and maintenance of herself and family, in any manner she may think proper."

Words could not be used more plainly to express an intention to give the wife control of *all* the property, including the real estate, and to give her the power to *use up,* consume, the personal property, if she saw fit. *That* was the result of the testator's "faith and confidence," in her, and that expresses the limit of her discretion.   Yet, that part of the will is construed with other parts as authorizing a disposition of the real estate beyond the life of the life tenant, as authority to consume the real estate.

Then follows the specific authority to deal with the real estate:

"And I empower her if she may deem it best *to sell any* real estate of which I may die seized, and *to convey* to the purchaser thereof the fee title absolute and the proceeds arising from such sale, *to re-invest* as she may think best in other real estate or personal property."

That defines with exactness what she may do with the real estate. She may sell and convey it but she *must* reinvest the proceeds. The personal property, he has just said, she may use as may be needed in the support of herself and her family. These specific directions in those parts quoted, "B" and "C," all expressed in one sentence, joined together as one thought, explicitly and completely show the testator's intention regarding the personal property and the real estate. She may use the former in support of the family, and she may convey the latter but she must reinvest the proceeds. How is it possible to get away from this distinction which the testator makes between the personal property and the real estate? The opinion goes counter to that manifest intention by attributing to the real estate the authority conferred in handling the personal property.

Then follows the final sentence of Paragraph II:

"It being my intention by this will *to empower* my said wife *to use, dispose of and enjoy* the property I may leave for herself and her family *while she lives* just as I should have power to use, dispose of and enjoy it during my life for the use of myself and family did I survive her."

This, plainly, is a summary of what has gone before. "It being my intention" (as heretofore expressed). She may "use" the property, "enjoy" it as theretofore expressed, and may "dispose of" it (as theretofore stated). Emphasis is placed upon the words "dispose of," as used there, as if that meant an absolute disposition of the real estate and consumption by use of the *corpus*.

It means nothing of the kind. She could "*dispose*" of it as above stated, not otherwise. In order to be certain that no mistake should be made the words are added "while she lives." Respondents interpret that expression as meaning to limit the time within which she might use, or dispose of, her property to her lifetime, as if it were possible for her to use it or execute any contract

concerning it after she was dead. Dr. Robberson, we will presume, was not supertitious and had no fears that his widow would return from the dead to "dispose of" the property he left in her charge. As a man of common sense with common knowledge of the meaning of words, he could not have thought it necessary to restrict her dealings with the property to the only time when she could deal with it—during her life. *"While she lives,"* is ignored by the opinion, but there it stands definitely expressing the desire of the testator. She could dispose of it for a period conterminous with her life, and no longer. She could lease it "while she lives" for a term within her lifetime. She could make any disposition of it while she lived, just as she might use it while she lived.

Respondents argue that the expression, "as I should have power to use, dispose of [etc.] did I survive her," as giving power to alienate beyond her life as he might have done had he lived. But that statement is bound up in the same sentence with the restriction "while she lives." If that expression be given any meaning she could do all the things he might do, affecting the property for her lifetime, but not thereafter.

Respondents contend that the will authorized Mrs. Robberson to dispose of the real estate and consume the *corpus* in support of the family. The opinion adopts that view, for it says:

"A careful reading of the will clearly indicates to our minds that testator intended to grant his widow unlimited power in dealing with said property and to allow her to do whatever he could have done, if living, provided that the disposition of same was for the benefit of herself and children. In other words, if any of his property was left at the widow's death, he wanted it to go to his children and not by any gift or will to another."

Consider the effect of that interpretation. It wipes out nearly all the provisions of the will. That disposition of the property could have been expressed in three lines. Whatever he could have done if living, involves

the power to mortgage, lease for 99 years or any other term, sell the real estate and divide the proceeds among the children, preferring some above others. With that construction she could have divided the real estate among the children; could have cut some of them off with a dollar each, and could have given the bulk of the property to others; she could have disposed of all of it by will, provided she devised it to the children. Can any rational examination of the will gather such intention of the testator? Yet the conclusion is necessary if the lease under consideration is valid. If the life tenant could alienate for terms beyond her life she was not limited as to the duration of such term, provided only she deemed it for the benefit of herself and children.

All of this comes from definitions of "dispose of" apart from the context—apart from "while she lives," to which it is inseparably attached. There is no authority for a construction of a will which ignores pregnant phrases, and wrenches operative words from their context. Yet, the opinion boldly says that common-law rules of construction may be disregarded.

Therefore I dissent.