SPRINGFIELD PLYWOOD CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21710.   Promulgated November 24, 1950.

*Wayne C. Gilbert, Esq.*, and *John L. Taylor, C. P. A.*, for the petitioner.
*Douglas L. Barnes, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* This case is submitted to us under Rule 30. As filed, it involved the following deficiencies:

| Year | Income tax | Excess profits tax |
|------|-----------|--------------------|
| 1942 | $41.07 | $19,840.50 |
| 1943 | | 10,908.06 |

The parties have, however, by stipulation settled· and eliminated all issues as to 1942, leaving the only issue before us as follows: Whether petitioner, which had acquired timberlands and within 6 months contracted for the removal of timber therefrom on a royalty basis, received ordinary income or, on the other hand, capital gain, in royalties paid for timber cut more than 6 months from the date of petitioner's acquisition of the timber property, and this, in turn, depends upon whether within the language of section 117 (k) (2) of the Internal Revenue Code and of Regulations 111, section 29.117–8, the timber was disposed of by the petitioner· at the time it contracted, within 6 months of acquisition, for the cutting thereof or, on the other hand, whether· there was no disposal until timber was removed.

All facts have been stipulated and by reference we find them to be as stipulated. Only such portions thereof as considered necessary of statement in examination and discussion of the issue, will be set forth herein. Such facts may be briefly stated as follows:

In January 1943 petitioner acquired certain timber property. On May 14, 1943, it entered into an agreement with D. & W. Lumber Co., a partnership, which agreement it is stipulated "contemplated the disposal" of certain classes of timber on petitioner's lands. Payments were to be made at certain prices and at certain rates as the timber was cut. The agreement which is extensive repeatedly referred to the petitioner as vendor and the copartnership as vendees, and in pertinent part provided as follows: that the vendor "does hereby agree to sell unto the vendees and the vendees do hereby agree to purchase of and from the vendor at the price and upon the terms and conditions

hereinafter stated all of the merchantable timber standing and down old growth and second growth fir timber and all merchantable standing and down hemlock and cedar timber" upon petitioner's lands; that the purchase price should be according to a scale dependent upon the kind of timber included in the above description; that the vendor granted the vendees right and license to enter upon the land and cut and log the timber under certain conditions; that before the 10th day of each calendar month the vendees should make a report of logs cut and pay therefor; that upon default in payment by the vendees "the right and license hereby granted to enter upon said lands and cut said timber" shall be suspended until default shall be removed; that cutting and removal of timber should commence by June 1, 1943, and proceed continuously, except for causes beyond vendees' control, at the rate of 45,000 feet per day, "the cutting license hereby granted" to terminate 2 years from the date of contract; that the vendor expressly reserves the right to have delivered to it all fir logs suitable for plywood, same to be delivered by the vendees to the vendor and paid for by the vendor at O. P. A. prices, less cost of loading; that "this agreement shall not become effective until and unless" within 20 days from the date thereof the vendees should execute to the vendor a performance bond or deposit $5,000 or execute to the vendor a chattel mortgage for $5,000 upon property worth $10,000, to insure performance of the agreement; that injury to or destruction of any of the timber, whether cut or uncut, by fire or the elements or otherwise should be at the vendees' risk, they to make full payment for the timber notwithstanding such loss or damage; that upon abandonment of the contract by the vendees or their failure to proceed to log the timber expeditiously as agreed or in case of any wilful default, the vendor may terminate the contract and recover damages in which event all logs cut and being upon the premises should be the property of the vendor; that "it is the intent of this contract that the vendee shall purchase and pay for all the standing and down timber on said lands on or before two years hereof" and that if at the expiration of that period "any timber agreed to be purchased" shall not have been cut, removed and paid for, the amount of such timber shall be determined and the vendees shall pay therefor at the prices specified, but without any right of removal thereof; that the specified rights and remedies for defaults shall not be exclusive of vendor's rights or remedies at law or equity; that the contract is unassignable and cannot be sublet except with the written consent of the vendor; that the vendees agree that it is a condition of the contract and the cutting license granted that they will pay all taxes upon the real property until they have cut, removed and paid for the timber agreed to be purchased; that the vendees must give

notice before entering upon any 40-acre tract to cut and log and notify the vendor of their progress, and that the order of cutting shall be such as not to reduce the average value of timber left standing, and that logging is to be done in an orderly, workmanlike manner in accordance with best logging practice and in compliance with the laws and regulations of the State of Oregon and the United States.

Petitioner disposed of the timber involved herein by and at the date of the contract of May 14, 1943, within the meaning of section 117 (k) (2) of the Internal Revenue Code.

The petitioner, under the above facts, agrees that its income from timber within 6 months of its acquisition of the timber is ordinary income, but contends that its gain from timber cut after 6 months from acquisition is capital gain; while the respondent's argument is that, under section 117 (j) (1) the term "property used in the trade or business" (so constituting capital assets and giving right upon sale or exchange to capital gain) includes timber "with respect to which subsection * * * (k) (2) is applicable,"[1] but that subsection (k) (2) is not applicable for under its language only gain or loss from timber held more than 6 months prior to disposal by the owner "under any form or type of contract" shall be considered "as though it were a gain or loss * * * upon the sale of such timber" and this timber, respondent says, was not held more than 6 months at time of disposal—which was, he argues, by the contract of May 14, 1943. He points to Regulations 111, section 29.117–8[2] which pro-

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

* * * * * * *

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

   (1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable.

* * * * * * *

(k) GAIN OR LOSS UPON THE CUTTING OF TIMBER.—

* * * * * * *

   (2) In the case of the disposal of timber (held for more than six months prior to such disposal) by the owner thereof under any form or type of contract by virtue of which the owner retains an economic interest in such timber, the difference between the amount received for such timber and the adjusted depletion basis thereof shall be considered as though it were a gain or loss, as the case may be, upon the sale of such timber.

* * * * * * *

[2] SEC. 29.117–8. GAIN OR LOSS UPON THE CUTTING AND DISPOSAL OF TIMBER.

* * * * * * *

   (b) *Gain or loss upon the disposal of timber under cutting contract.*—If a taxpayer disposes of timber under any form or type of contract whereby he retains an economic interest in such timber, the disposal under the contract shall be considered to be a sale of such timber. The difference between the amounts received for the timber in any taxable

vides in brief that disposition under the contract is considered to be the sale of the timber. The petitioner on brief says "The regulation * * * cannot mean anything else than that he consider the timber to have been disposed of as of the date of the execution of the contract," so that the parties appear in full agreement as to meaning of the regulation and the petitioner is in effect therefore attacking it.

The parties, in short, agree that the question controlling here is: Did the contract dispose of the timber, or was it disposed of only when cut and removed? The petitioner says, on brief, "The question can be narrowed down to this: What is the meaning of the phrase 'disposal of timber' as used in Section 117 (k) (2) of the Internal Revenue Code?" Petitioner's argument discloses repeatedly that it considers disposal to be synonymous with sale, and that there being, in its view, no sale of timber until it was cut, there was no "disposal" under the statute, on May 14, 1943, by the contract. Thus, it is argued that "* * * the contract does not operate as a sale of the timber * * *"; also, "* * * under a contract such as the one in question there was no sale of the timber but only a license to cut * * *." Again: "Title remained in the petitioner." Finally: "A preliminary contract granting cutting rights is not a sale."

The error we see in this view is that the statute requires, not sale, but "disposal" of the timber, and that the terms "disposal" or "dispose of" are, on high authority, broader than "sell."

In *Phelps* v. *Harris*, 101 U. S. 370, 380, we find "The expression 'to dispose of' is very broad, and signifies more than *to sell*. Selling is but one mode of disposing of property." Therein a codicil to a will gave the power to dispose of the property and it was held that this included partition. In *United States* v. *Gratiot*, 39 U. S. 526, it was held that the power of Congress under Article 4, Section 3 of the Constitution to "dispose of" public lands authorized leasing of lead mines thereon. The lease was upon a royalty basis, and, remarkably analogous to the use of the word "license" in this case, the contract there was headed "License for smelting" and in the body of the contract was referred to as a license. As here in effect argued, the contention was made that the words "dispose of" vested in Congress "the power only to sell and not to lease such lands." This contention the Court declined to follow.

year and the adjusted basis for depletion of the timber with respect to which the amounts were so received shall be considered to be a gain or loss upon the sale of such timber for such year. If the taxpayer owned the timber for a period of more than six months prior to the date of such contract, for the purposes of section 117 (j) such timber shall be considered to be property used in the trade or business for the taxable year for which it is considered to have been sold along with other property of the taxpayer used in the trade or business as defined in section 117 (j) (1). Whether gain or loss resulting from the disposition of the timber which is considered to have been sold will be deemed to be gain or loss resulting from the sale of a capital asset held for more than six months will depend upon the application of section 117 (j) in the case of the taxpayer.

In *Hill* v. *Sumner*, 132 U. S. 118, Sumner sold one-eighth interest in a mine to Hill for $10,000, $1,308.43 in cash and the remainder to be paid out of the first production from the mine, with the provision that if Hill should "dispose of or sell one-eighth part" of the property, then the balance of the $10,000 should become immediately payable. Hill made a lease to one Jenks and action was brought by Sumner's assignee contending that by making the lease Hill had disposed of the property and become immediately liable for the residue of the $10,000. The Court held that "dispose of" is not synonymous with "sell," looked to the purpose of the arrangement and contract and required Hill to pay the balance of the $10,000. In *Dayton Brass Castings Co.* v. *Gilligan*, 267 Fed. 872, the Court says "they [the words 'dispose of'] do not mean the same as the word 'sell,' selling being but one mode of disposing of property." In *Koerner* v. *Wilkinson*, 70 S. W. 509, it is said that "disposal" is a word of broad significance. "Disposal" or "disposed of" has been held to cover leasing in the following cases: *Rider* v. *Cooney*, 23 Pac. (2d) 261; *Holland* v. *Bogardus-Hill Drug Co.*, 284 S. W. 121; *Midland County* v. *Slaughter*, 130 S. W. 612. In *St. Louis Union Trust Co.* v. *MacGovern & Co.*, 249 S. W. 68, a case involving a deed of trust, the court says that "disposed of" has a broader meaning than "sell" and includes exchange.

It thus appears that, on the text of section 117 (k) (2) something other than sale was sufficient; and we discover in the history of the legislation no Congressional intent to mean otherwise, that is, to intend only sale. Moreover, the regulation, with particular reference in its heading to a cutting contract, construes disposal as one "under any form or type of contract whereby he retains an economic interest in such timber," (which the parties agree here to be the case) and that "the disposal under the contract shall be considered to be a sale of such timber," and "If the taxpayer owned the timber for a period of more than six months prior to the date of such contract, for the purposes of section 117 (j) such timber shall be considered to be property used in the trade or business * * *." In the light of the generality of the meaning of "disposal" under the above cases, it cannot validly be argued that the Commissioner by such language was legislating beyond the intendment of the statute. It follows that the regulation cannot be found invalid. Moreover, Congress, legislating as to timber, cannot reasonably be considered to have overlooked or excluded the cutting contract here involved from the language "disposal of timber * * * under any form or type of contract by virtue of which the owner retains an economic interest * * *." In addition, the contract not only refers to vendor and vendees, but (despite various expressions such as "license" tending, we agree, to indicate less than sale) contains provisions

strongly indicative of sale. Thus, the timber (of the categories involved) is all to be paid for at the end of 2 years, whether cut and removed or not. The petitioner under the contract was to pay the vendees for peeler logs selected by it from fir logs cut from the premises by the vendees. This seems consistent only with the earlier sale by the contract of all logs (of the categories named in the contract) to the vendees. The risk of fire or destruction by the elements was upon the vendees, and theirs was the duty to pay taxes. In our view, the timber involved was all sold on May 14, 1943, and only payment, as agreed, was delayed. However, as above seen, even without sale, in our opinion within the statute and within a reasonable and valid regulation, disposal took place on that date. It follows that petitioner is not entitled to be taxed on its gain, after 6 months from petitioner's acquisition, as upon sale of capital assets. No error by the Commissioner on this issue is shown, and it is held that he correctly determined that none of the gains were capital gains.

As provided particularly in the stipulation of the parties, in case of the above conclusion by us, decision of deficiencies will be entered as follows:

> *For 1942 deficiency in income tax $41.07 and deficiency in excess profits tax $18,520.61.*
> *For 1943 deficiency in excess profits tax of $7,842.70.*

Reviewed by the Court.

LEECH, *J.*, dissents.