OPINION. Oppee, Judge: The facts in brief are as follows: On November 1, 1945, petitioners and the Norrises as partners entered into a cutting contract with the owners of timberland whereby they acquired the right for 30 years to cut all timber on certain property owned by C. G. Wiggins and his wife, Laura Weltha Wiggins. The Wiggins family retained title to the timber until cut and the right to fixed royalties from cut timber, as well as certain obligations, such as the payment of taxes on standing timber. Petitioners and the Norrises -were obligated to build a sawmill as soon as possible, and to operate that sawmill at maximum efficiency. On November 20,1945, petitioners and the Norrises transferred in substance their rights to cut the timber to the Addisons, in return for royalties from any cut timber. They further specified that there could be no further assignment by the Addisons of the rights acquired under their contract without the consent of petitioners, the Norrises, and the Wiggins family. Some 5 years later a new arrangement was made with Humboldt, calling for it to assume the obligations of both the partners and the Addisons, who, along with Wiggins, became parties to the new contract. This is claimed by petitioners to constitute a sale by them resulting only in long-term capital gain. Both parties seem agreed that section 117 (k) (2), Internal Revenue Code of 1939,[1] cannot apply to the Addison contract, and it makes little difference whether this is because it arose in less than 6 months, as respondent contends, or because petitioners are right that they were not the “owners” of the timber. It would not under either contention have been a “sale,” which is not necessary for the application of that' provision. Springfield Plywood Corporation, 15 T. C. 697. And neither party relies on that sectioji as applying to the Humboldt transfer, the event actually in controversy, though respondent, perhaps inconsistently, there adopts petitioners’ contention as to ownership. What petitioners acquired was in the nature of a lease with the authority to remove and sell. So far the parties are in accord. The partnership was ¡authorized to assign the Wiggins contract.[2] But' petitioners insist that there was no assignment to the Addisons and respondent is indifferent. That the Wiggins contract was assignable by its terms does not thus admit of any doubt. It could have been and was the source of ordinary income while petitioners retained it. It could have been the subject of a capital transaction if it was sold. The difficulty is, the lease was not assigned by petitioners to Humboldt in any realistic sense. Petitioners’ right to cut, use, and market the timber had already been assigned to the Addisons. What petitioners had left was, in essence, the right to receive the proceeds in terms of money. Had petitioners assigned this right to Humboldt, there might have arisen a problem as to whether the profit was ordinary income, Hort v. Commissioner, 313 U. S. 28; Commissioner v. Starr Bros., (C. A. 2) 204 F. 2d 673; or capital gain, Bell v. Commissioner, (C. A. 8) 137 F. 2d 454; McAllister v. Commissioner, (C. A. 2) 157 F. 2d 235. But petitioners did not assign this right. Receipt of the money proceeds of cutting was precisely what they continued to be entitled to. Precedents dealing with assignments of patents, copyrights, and the like are thus beside the point. Cf. Irving Berlin, 42 B. T. A. 668; Herman Shumlin, 16 T. C. 407. It is not necessary to decide whether the arrangement by petitioners with the Addisons was a sale, assignment, or other disposition. The 20 days of holding period were insufficient to make it more than short-term capital gain, and petitioners do not contend otherwise. And any “sale” to Humboldt and the transfer to the Addisons were too similar for different treatment. On neither approach can petitioners succeed. Decision will be entered for the respondent. SEC. 117. CAPITAL GAINS AND LOSSES (k) Gain oe Loss in the Case OB’ Timbee oe Coal.— **»»**» (2) In tlie case of the disposal of timber or coal (including lignite), held for more than 6 months prior to such disposal, by the owner thereof under any form or type of contract by virtue of which the owner retains an economic interest in such timber or coal, the difference between the amount received for such timber or coal and the adjusted depletion basis thereof shall be considered as though it were a gain or loss, as the case may be, upon the sale of such timber or coal. Such owner shall not be entitled to the allowance for percentage depletion provided for in section 114 (b) (4) with respect to such coal. This paragraph shall not apply to income realized by the owner as a co-adventurer, partner, or principal in the mining of such coal. The date of disposal of such coal shall be deemed to be the date such coal is mined. In determining the gross income, the adjusted gross income, or the net income of the lessee, the deductions allowable with respect to rents and royalties shall be determined without regard to the provisions of this paragraph. This paragraph shall have no application, in the case of coal, for the purposes of applying section 102 or subchapter A of chapter 2 (including the computation under section 117 (c) (1) of a tax in lieu of the tax imposed by section 600). "* * * ntewiBe> it created more than a license for the simple reason it was assignable without any prior authorization.” (Resp. br., p. 16.)