(Decided 12th February, 1885.)

———————

ELIZABETH H. COLLINS and RICHARD BERNARD, Administrators, c. t. a. of JOHN ESCHBACH *vs.* MARCELLA MACTAVISH, Trustee.

*Will—Power—Change of Investment—Lease for ninety-nine years—Intention of Testator.*

Where a testator devised his residuary estate to his wife, in trust, and gave her power as such trustee, to change the investments thereof in her discretion, subject to the consent of certain named persons, she is authorized in the execution of such power to make leases for ninety-nine years, renewable forever, of unimproved lots in the City of Baltimore, constituting part of the estate devised, the testator clearly intending that such might be done.

APPEAL from the Circuit Court of Baltimore City.

The decree from which this appeal was taken, is nearly identical with the decree from what the appeal in

the case of the same appellants against Foley, immediately preceding this case and argued with it, was taken. The lease in this case which the defendants were decreed to accept, was for the term of ninety-nine years from the 2nd of August, 1876, renewable forever. The case is further stated in the opinion of this Court.

The cause' was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*Francis P. Stevens, Richard Bernard,* and *Arthur W. Machen,* for the appellants.

*S. Teackle Wallis, Jr.,* and *S. Teackle Wallis,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case the authority of the appellee to make leases is founded upon the will of Charles Carroll Mactavish, which was admitted to probate in March, 1868. By this will the testator devised his residuary estate to his wife (the appellee), Marcella MacTavish, her heirs, executors and administrators in trust to apply the income and revenue thereof to her own use during her life, and after her death he devised the same to his four children, but subject to certain limitations which it is unnecessary to state. Then, with respect to the *powers* of the said Marcella, he makes the following provisions:

"I hereby authorize and empower my wife, as trustee aforesaid, so long as she shall remain unmarried, and her successors in this trust with the consent of Thomas C. Yearley during the life-time of the latter, and, after his death, with the consent of Daniel J. Foley, and after Mr Foley's death, with the consent of her brothers-in-law, Henry Scott and Gould Hoyt, the two last persons to be consulted until such time as *two* of my children shall arrive at

Collins and Bernard *vs.* MacTavish.

the age of twenty-one years, when said children and my remaining children as they respectively arrive at twenty-one years of age are to be consulted, and with their consent to make such *change of investment* of my estate and such re-investment and changes thereof from time to time as may be in the estimation of my said trustee proper and advantageous, *to which end* I hereby authorize and empower my said trustee to do all lawful acts and things, and execute and deliver all needful deeds, *leases* and other instruments of writing in the premises with the consent and authority aforesaid."

"And I further declare it to be my will and intention that my said wife, trustee as aforesaid, shall continue to exercise the rights and powers conferred upon her as above stated, so long only as she shall remain unmarried, and that should she contract a second marriage then the said trust to cease, and I hereby constitute and appoint her brothers-in-law, Henry Scott and Gould Hoyt, as and for my trustees in her stead, to take charge of my estate immediately after such marriage, and I hereby confer upon them all the powers previously conferred upon and exercised by my wife, as trustee aforesaid, subject to the same conditions."

This case was argued with the preceding one, and it is not therefore necessary to repeat what we have said in our opinion in that case in reference to questions which are common to both.

It is very clear that under this will the leasing power is not open to the objection of transgressing the perpetuity rule, for in no event can either the power or the trust continue for a longer period than the widowhood of Mrs. MacTavish and the lives of Scott and Hoyt. Nor have we any difficulty as to the objection that the assent to the lease of the children, who had attained majority, had not been obtained. The will requires the assent of different

parties at different times, and whose assent was necessary in this case depends upon the question, who were required to assent on the 10th of March, 1876, the date of the contract for the lease? At that time only *one* of the children had attained the age of twenty-one, and by the plain terms of the will the assent of the children was not required until *two* of them had attained that age. The assent of Mr. Yearley was all that was then required and this assent is secured to the appellants by the decree appealed from. The object of the bill in the case is to enforce specific execution of the contract of the 10th of March, 1876, and if it was good in this respect at the time it was made, the appellants cannot escape the obligation to execute it because the assent of *other parties* may have become necessary to leases made at a subsequent period.

The only remaining objection that need be noticed is that the power is given for the purpose of changing investments, and a lease for ninety-nine years renewable forever is not a good execution of such a power. It may be true that the usual mode of effecting a change of investment is by a *sale* of the property or securities in which the original investment stands, and putting the proceeds in other property or securities; but the question here is, what was the intention of the testator in this respect? In this, as in other parts of his will, that intention must prevail unless it contravenes some established rule of law. The testator speaks of a "*change of investment*" of his "*estate*" and a part of that estate consisted of vacant unimproved lots in Baltimore City. Now the owner of such property who wished to make it productive or available, and was unable or unwilling to improve it himself, could either sell it outright and invest the proceeds in other securities, or lease it under perpetual leases reserving a substantial annual money rent. It seems to us clear that the testator in-

tended the latter course might be adopted with respect to this portion of his estate; for he not only fails to give a power of *sale* in direct terms, but expressly confers upon the trustee the power to execute *leases.* Such leases would practically work a change of investment of so much of his estate as consisted of or was invested in these unimproved and unproductive city lots. As explained in *Banks vs. Haskie*, 45 *Md.*, 217, the owner and lessor secures by such a lease the prompt payment in perpetuity of the interest on a sum of money equivalent to the value of the property in fee at the time the lease is made. By this means he derives an income from his land, and makes a "secure and permanent *investment of its value* in the land itself." We are therefore clearly of opinion that the appellee had the power to make the lease in controversy, and that the appellants will acquire a good title thereunder.

> *Decree affirmed, and*
> *cause remanded.*

(Decided 12th February, 1885.)