## SOPHIA J. SWEENEY et al.

### vs.

## HAGERSTOWN TRUST COMPANY et al., Trustees, et al.

*Lease by Trustee—Length of Term—Right of Renewal—Effect.*

A trustee acting under a trust by which the "rents" from the trust property were directed to be paid over to or for the life beneficiary, had power to lease the property for terms of such length as were customary and necessary in that community in order to secure a fair income from the property, not extending beyond the period of the probable continuance of the trust.

pp. 618-620

A lease for five years with a right of renewal for a like term is not a lease for ten years, so as to fall within the requirements of Code, art. 21, sec. 1, as to acknowledgment and recording. pp. 620, 621

Where an option of renewal, in a lease by a trustee, is not shown to be necessary to the proper administration of the trust, or customary in leases in that community, and a renewal of the lease for the period named in the option would extend the lease unreasonably beyond the period of the probable continuance of the trust, the option is not enforcible. p. 622

Where the decree was filed May 15th, and July 10th the clerk was directed to enter an appeal "from the opinion," the appeal may be regarded as having been taken from the decree, in order to avoid a dismissal of the appeal. p. 622

*Decided January 30th, 1924.*

Appeal from the Circuit Court for Washington County, In Equity (WAGAMAN, J.).

Bill by Sophia J. Sweeney and others against the Hagerstown Trust Company and Richard H. Sweeney, Trustees,

and others, for a sale of certain property free of certain leases thereon. From a decree upholding the validity of said leases, the plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Richard H. Sweeney,* for the appellants.

*Robert H. McCauley* and *Henry H. Keedy, Jr.,* with whom was *William P. Lane, Jr.,* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the Court.

By his last will and testament, which was admitted to probate in 1890, James L. Hurley, the owner of an undivided one-half interest in a property on Washington Street, in Hagerstown, Maryland, known as the Lyceum Building, devised the same to a trustee upon the following trust:

"said trustee to have the control and management of said property thus devised to him in trust and use the rents, interest or proceeds thereof in a judicious manner towards the support and maintenance of my said son, William J. Hurley, or pay the said rents, interest or proceeds over to the said William J. Hurley as he may deem best for the welfare of my said son for and during the life of my said son, and after his death the property thus devised in trust shall be equally divided among the children of my said son, legitimately begotten, and if he dies without any legitimate issue then said property is to be equally divided between the brother and sisters of my said son, William J. Hurley."

The other undivided one-half interest in said property was purchased by the said William J. Hurley in 1906, and he and the trustee appointed by the court in the place of the trustee named in said will, on the 1st of October, 1919, exe-

cuted a lease of a part of said property, spoken of as the west storeroom, to Samuel M. Shafer for the term of five years, beginning on the 1st of April, 1920, for the annual rental of $2,100, and on the 1st of January, 1921, the said William J. Hurley and the Hagerstown Trust Company, substituted trustee under the will of James L. Hurley, executed a lease of the remaining part of said property to James Koliopulos, at the annual rental of $2,100, for the term of five years, beginning on April 1st, 1919, and ending on March 31st, 1924, "with the privilege re-rental." The lease to Koliopulos was on the 31st of May, 1921, assigned by him to Charles M. Lumm, and on the same day the Hagerstown Trust Company, trustee, and William J. Hurley executed an agreement with Charles M. Lumm extending the term of said lease to March 31st, 1926. William J. Hurley died on April 25th, 1922, at the age of seventy-two years, without leaving a child or children, and some time thereafter the Circuit Court for Washington County, in a proceeding instituted therein, held that the undivided one-half interest of James L. Hurley in said property vested under his will in the brothers and sisters of William J. Hurley, subject to be divested by the birth of a legitimate child of William J. Hurley, and in proceedings for a sale of the property for the purpose of partition, to which the lessees were not made parties, the court appointed trustees to sell the property. Thereafter some of the parties interested in the proceeds of the sale to be made by the trustees appointed by the court filed the bill of complaint in this case against said trustees and the two lessees, in which, after setting out the facts we have referred to, they allege that the substituted trustee under the will of James L. Hurley had no authority to lease the property for terms extending beyond the life of William J. Hurley; that said leases are therefore null and void, and that if the trustees appointed by the court were to sell the property subject to said leases it would result in great loss to the parties interested. The prayer of the bill is for an order of

court directing the trustees to sell the property free of the leases, and for general relief.

The lessees answered the bill, alleging that the lessors not only had the power and authority to make said leases, and "to grant the extension of the Lumm lease, but that it was the duty of the trustee to lease the property" for such reasonable terms as would be to the best advantage of the parties interested; that owing to the location and character of the property it was not adapted to any but business purposes, that a reasonable rental therefor could not have been obtained without renting it "for a reasonable term of years," that the terms for which the properties were rented were reasonable terms, and that by so renting the property a "much larger rental was obtained" than could have been obtained by renting them from year to year or for terms to expire at the death of William J. Hurley, that at the time the leases were executed it was the custom in Hagerstown to lease such properties for a term of years; that the properties could not have been rented for a reasonable sum for a term less than five years, and that at the time the leases were executed the probability was that they would not extend beyond the lifetime of William J. Hurley. The answer of the lessees also denies that a sale of the property by the trustees subject to the leases will result in a loss to the parties interested. The answer of Richard H. Sweeney, one of the trustees appointed by the court to sell the property, who also appears as attorney for the plaintiffs in the bill, admits all the averments of the bill, while the answer of the Hagerstown Trust Company, the other trustee appointed by the court to sell the property, who was also the substituted trustee under the will of James L. Hurley, admits all the facts alleged in the bill, except the averments that the leases are void, and that the sale of the property subject to said leases would result in a loss to the parties concerned, and alleges that the leases were executed at the request of the life tenant, William J. Hurley, who, so far as it knew, was at that time in sound health; that it did not consider the terms of said leases unreasonable, but

considered them to the advantage of the life tenant and the trust estate, and that they were within "the discretionary power of the trustee."

Counsel for the plaintiffs and Samuel M. Shafer filed an agreement,

> "1.    That, owing to the location and the character of the property leased to Samuel M. Shafer, mentioned in the bill of complaint, it was and is not adapted for any other purpose than a business property.
>
> "2.    That it is and was at the time the said lease was entered into, the custom in Hagerstown, Maryland, to lease property similarly adapted for a term of years.
>
> "3.    That the term of the said lease, to wit, five years, was a reasonable term, and the rent reserved in the said lease was a fair rental for the said property at the time the said lease was entered into.
>
> "4.    That the said William J. Hurley died on April 25th, 1922, at the age of 72 years."

Counsel for the plaintiffs and Charles M. Lumm also filed an agreement as to the facts set out in the first, second and fourth paragraphs of the above agreement.

Charles R. Grove, a witness for the plaintiffs, who said that he had been engaged in the real estate business in Hagerstown for eighteen or twenty years, and was acquainted with the rental values of property on West Washington Street, testified on cross-examination that the fair rental value of the property occupied by Mr. Lumm under the lease in question was from $150 to $200 per month, and that the fair rental value of the property occupied by Mr. Shafer under his lease was about the same, that the property could not have been rented advantageously for a term less than five years, and that he did not think it would have been possible to rent property of that character under an agreement that the lease should terminate upon the death of any individual. Charles F. Strole, a witness for the defendants,

testified that he had been engaged in the real estate and insurance business in Hagerstown for nine years and was familiar with the values and rental values of properties on West Washington Street; that in his opinion the rental value of the property included in the Lumm lease was from $150 to $200 per month, and that the rental value of the property covered by the Shafer lease was "a little more," that the terms of five years mentioned in said leases were reasonable terms for property of that character, that they could not have been rented to advantage for a term of one year, and that in his opinion it would not have been possible to obtain a satisfactory rent for the properties under a lease for a term to end on the death of any person. H. J. Stallings, who stated that he had been in the real estate and insurance business in Hagerstown for seven years, and was familiar with the values of property on West Washington Street, testified that five years was a reasonable term for a lease of a business property on West Washington Street, that the fair rental value of the property occupied by Mr. Lumm was $175 per month; that in his opinion the property could not have been rented advantageously from year to year, and could not have been rented to a substantial party for a term ending on the death of a person. Charles O. Easton, another witness who was engaged in the real estate and insurance business in Hagerstown, testified to the same effect, and Samuel B. Loose, Esq., president of the Hagerstown Trust Company, testified that the Lumm lease was executed at the request of William J. Hurley. The defendants also offered in evidence a mortality table, which shows that the expectancy of life of a man seventy years of age is 8.48 years, and of a man seventy-one years of age is eight years.

It thus appears from the admissions and agreements of the parties and the evidence in the case that the properties covered by the two leases in question were only adapted to business purposes; that it was the custom in Hagerstown to lease such properties for a term of years, that they could not

have been rented profitably for a year or from year to year, or for a term subject to be terminated by the death of William J. Hurley, that the term of five years was a reasonable and the customary one for such property in Hagerstown, and that the rent reserved in said leases was a fair and reasonable one, that William J. Hurley, in addition to an equitable life estate in an undivided one-half interest in said properties, was the owner in fee of the other undivided one-half interest, that said leases, and the extension of the Lumm lease, were executed by the trustee at his request and at a time when his expectancy of life was eight years, and there is no evidence in the case tending to support the averment of the bill that a sale of the property subject to the leases would result in a loss to the parties interested. Upon this state of facts, as disclosed by the record, we entirely concur in the conclusion reached by the court below that the lease to Samuel M. Shafer "is a valid and subsisting lease" of the property therein mentioned for the term of five years, ending on the 31st of March, 1925, and that the lease to James Koliopulos, assigned to Charles M. Lumm, "is a valid and subsisting lease" for the term of five years and the extension of said term to the 31st of March, 1926.

In the case of *In re Hubbell Trust,* 135 Iowa, 637, 13 L. R. A. N. S. 498, the Supreme Court of Iowa, in a carefully prepared opinion delivered in 1907, states as the result of the decisions bearing upon the question of the power of trustees to lease property for terms extending beyond the duration of their trust, that "only general rules can be laid down for the guidance of trustees, and those deducible from the decisions contained in better considered opinions, and based, as we think, on the soundest reason, may be summarized thus, (1) the trustees may lease for such reasonable terms as are customary and essential to the proper care of and to procure a reasonable income from the property. (2) Such terms should not, save on showing of reasonable necessity to effectuate the purpose of the trust, extend beyond the period the

trust is likely to continue. (3) Should they extend unreasonably beyond such period, the excess only will be void. (4) Only upon a showing of such reasonable necessity when not given such power by the instrument creating the trust will the trustees be authorized to bind the estate so as to effectually deprive those ultimately entitled thereto of the property itself." The same statement is made in 26 *R. C. L.* sec. 154, p. 1301, "as a summary of the general rules deduced from well considered opinions, and based on sound reasoning," and it is there said: "The reasonableness of the term, which is subject to the supervisory jurisdiction of a court of equity, depends on the character of the property, the purposes of the trust, the local custom in reference to the management of similar property, and the conditions existing at the execution of the lease." The will of James L. Hurley gave the trustee the control and management of the property and directed that the "rents" therefrom should be applied by him to the support and maintenance of his son, or paid over to his son. The duty thus imposed upon the trustee carried with it the implied power to lease the property, and the record shows that the leases in question were made for terms that were customary and necessary in Hagerstown in order to secure a fair income from the property, and that did not extend beyond the period the trust was likely to continue. The only case in this State reflecting at all upon the question is the case of *Collins* v. *Foley,* 63 Md. 158. There the testatrix devised the residue of her estate to a trustee to be held for the use and benefit of her son during his life, and after his death for the use and benefit of his children, &c. The will authorized the trustee to change the investments, and gave him "full power to make and execute any and all leases" of "any and all portions" of the estate "as he may deem advantageous and proper." After stating that the general rule was that such powers "must be construed according to the intention of the parties," JUDGE MILLER said: "Applying this rule to the will before us, there seems to be no room for error or doubt. The testa-

trix was possessed of farming lands in the country, and of vacant, unimproved lots in the City of Baltimore. The only mode by which the trustee, under the powers given him, could make the latter (without selling it) productive of income was to lease them, according to the prevailing system of tenure in that city, under leases for ninety-nine years, renewable forever; and when she gave him the power to make 'all leases whatsoever of any and all portions' of the residue of her estate which he might deem advantageous and proper, it is perfectly clear she intended he should have the power to make such leases of her unimproved city lots, and that, too, whether they were made for the purpose of changing investments or not." The reasoning of the Court in that case tends to support our conclusion in this case that the implied power of the trustee to lease the property authorized him to make such leases as were customary and necessary in Hagerstown in order to secure a fair income from the property and within the probable duration of the trust. The cases of *Bergengren* v. *Aldrich,* 139 Mass. 259; *Standard Metallic Paint Co.* v. *Prince Manufg. Co.,* 133 Pa. 474, and *Gomez* v. *Gomez,* 147 N. Y. 195, when viewed in the light of the facts to which they applied, are not at variance with the general rules we have stated.

The appellants also insist that the effect of the right of renewal in the Lumm lease was to convert that lease into a lease for a term of ten years, and as the lease was not acknowledged and recorded as required by section 1 of article 21 of the Code, the lessee, under the case of *Falck* v. *Barlow,* 110 Md. 159, took at most a tenancy from year to year. The cases of *King* v. *Kaiser,* 126 Md. 213; *Read Drug & Chemical Co.* v. *Nattans,* 129 Md. 67, and *Thompson* v. *Thomas & Thompson Co.,* 132 Md. 483, cited by the appellants, do not justify that view. On the contrary this Court in each of those cases sustained the right of the lessee to a specific performance of agreement to execute a new lease. The Lumm lease is for five years, "with the privilege (of) re-rental." This,

in terms, gives the lessee a privilege or *option*, which, if exercised by the lessee, would ordinarily entitle him at the end of the five year term to a new lease for a like term, and while a court of equity may, under certain circumstances, in order to protect the interest of the lessee, treat such a lease, when the option is exercised, as equivalent to a lease for the full period of the two terms, without any necessity for the execution of a new lease, on the principle that a court of equity regards that as done which ought to be done, it is said in 16 *R. C. L.* 889, that "according to the generally accepted rule the interest of the lessee, after the expiration of the original lease, is purely equitable as distinguished from a legal interest, the original lease not constituting a present demise for both the original term and the renewal term, but calling for the execution of a new lease or something equivalent to it." See also *Spear* v. *Orendorf*, 26 Md. 37. While in *Stewart* v. *Gorter*, 70 Md. 242, the Court held that a lease for fourteen years, with a covenant to renew for another fourteen years, was "in effect" a lease for a longer period than fourteen years, *within the meaning of the Act of* 1888, providing that a lease for more than fifteen years should be redeemable at any time after the expiration of ten years from the date of the lease, in *King* v. *Kaiser, supra,* this Court, in construing a lease for five years, with an agreement for renewal for twenty years, and determining whether the agreement for a renewal operated as an extension of the term so as to bring the lease within the requirements of section 1 of article 21 of the Code in regard to acknowledging and recording, after holding that the agreement was not an extension of the lease, said in reference to the case of *Stewart* v. *Gorter, supra,* which was relied on by the appellant, that "a reading of that opinion cannot fail to disclose the fact that what had been attempted in that case was a deliberate evasion" of the Act of 1888, and that that case was "wholly inapplicable" to the case then under consideration. In *King* v. *Kaiser, supra,* the Court also said that the agreement re-

ferred to could be enforced if it "be regarded as merely in the light of an option."

The privilege or option given in the Koliopulos lease had not, so far as the record discloses, been exercised, and the court below did not pass on the right of the assignee to a renewal of that lease. But for fear that our affirmance of the decree may be construed as sanctioning that right, we may add that under the general rules to which we have referred the privilege of or option for the renewal cannot be enforced. There is no evidence in the case to show that such an option was necessary for the proper administration of the trust confided to the substituted trustee or customary in Hagerstown, and a renewal of the lease for a like term of five years would extend the estate of the lessee unreasonably beyond the period the trust was likely to continue.

The order for appeal in this case, which was filed in July 10th, 1923, directed the clerk to enter an appeal "from the opinion" of the court, and the appellees have filed a motion to dismiss the appeal, but as the decree was filed on the 15th of May, 1923, we think the appeal should be regarded as having been taken from the *decree,* and the motion to dismiss will, therefore, be overruled.

> *Decree affirmed, the costs in this Court to be paid by the trustees appointed by the court below to sell the property out of the proceeds of the sale.*