ROGER NORTH *vs.* AUGUSTA REAL ESTATE ASSOCIATION.

Kennebec.      Opinion May 27, 1931.

*Ernest L. Goodspeed*, for plaintiff.
*Walter M. Sanborn,*
*Perkins & Weeks*, for defendant.

SITTING: DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

BARNES, J. This is a bill in equity praying the court to construe portions of a will and determine on the legality of certain proceedings; also to point out the pathway for further procedure.

Plaintiff's grandfather died in 1882, leaving by devise to trustees parcels of real estate, and his interest in a vacant lot, in the congested section of Water Street in Augusta.

The remaindermen were to be the testator's grandchildren, if any survived the widow and sons, with descendants of grandchildren, deceased, at the death of the surviving son, when the trust was to terminate.

It was plainly the intent of the testator, that none of the trust property was to be sold by the trustees, but, as parties agree, was to be managed and controlled by them.

Property in the vacant Water Street lot, at probate of the will, was an undivided half-interest; a like ownership being in a Davis family.

The trustees and the Davis parties were then tenants in common of the vacant lot; and plaintiff, since July 3, 1926, by purchase from the other remaindermen under the will, has his grandfather's interest in the lot, and owns only an undivided half-interest therein.

In the trustees' hands until October 1, 1891, the lot lay unproductive and a charge on the estate for taxes.

On that date, joining with the other owners, the trustees exe-

cuted a lease to L. K. Smith for a period of ten years, the rental for the whole lot to be two hundred dollars per year, and all taxes,. "during the term aforesaid, and for such further time as the Lessee· may hold the same," to be paid by the Lessee.

The lease further prescribed, "in consideration that said L. K. Smith shall hereafter erect a brick building on said premises it is. further mutually agreed by and between said Lessors and Lessee,. that upon the termination of this lease, such brick building so erected shall be the sole property of said Smith: . . . That if said Lessors and Lessee shall not at the expiration of this lease, mutually agree to extend said lease for a further term of years, that said Lessee shall then sell and convey to said Lessors, and said Lessors shall purchase said building which shall be erected by said Lessee, at a fair valuation and for a fair consideration therefor, to be mutually agreed upon, if practicable, . . . and if said Lessors and Lessee shall not thus mutually agree upon the valuation thereof, and consideration to be paid therefor, that said Lessors shall pay, and said Lessee shall receive such sum for said building as shall be fixed by three appraisers, one to be chosen by said Lessors, one by said Lessee: . . . and a third appraiser by the two thus chosen, if said Lessors and Lessee shall not mutually agree upon said third appraiser, and when said value shall be so determined, said Lessee hereby agrees to sell and convey for and said Lessors hereby agree to purchase and pay therefor such appraised value thereof."

Smith built of brick a business block, and the lease was several times renewed, last for a term of five years, to end on October 1, 1926, the rent by the last lease to be three hundred dollars a year; and all renewals of the lease containing the original clause relating to purchase of the building.

The building was more than once sold, with chattel bill of sale and assignment of lessee's rights, and on January 9, 1914, was so purchased and has been since held by the defendant.

The last of the trustees died April 1, 1926; and in the early part of July, 1926, the remaindermen divided the real estate inherited, plaintiff becoming sole owner of the undivided half-interest left by the testator.

It is not denied that plaintiff received his proportional part of

the benefit of rent of the lot during the running of the several leases; and from July 1, 1926, until October 1, 1926, he received the rent paid.

In compliance with the terms of the series of leases the lessee paid the taxes on the lot up to 1928, although plaintiff offered to pay the tax in 1927. Plaintiff paid these taxes in 1928 and 1929, although defendant offered to pay them.

By a letter dated September 30, 1926, plaintiff notified defendant he would not renew the lease and would expect rent at the rate of five hundred dollars a year for his part of the lot so long as defendant occupied the premises.

From that time until the filing of plaintiff's bill on July 8, 1930, defendant and plaintiff discussed from time to time two propositions; first, rental; second, sale of plaintiff's interest in the lot, but failed to agree as to amount of rental or value of the land.

Hence, although defendant has tendered payment of rent at the times and rate fixed in the lease, plaintiff has declined to accept the same since October 1, 1926.

Plaintiff never ordered or requested defendant to vacate the premises.

The only demand made was for the increase in rent, and such demand does not serve as a notice to quit, *Cogan* v. *Ryan*, 130 Me.

Correspondence between the parties, and in their behalf between their respective attorneys, continued up to June 5, 1928, but no agreement was arrived at.

Plaintiff asks whether or not the lease originally executed by the trustees was a valid lease; when it terminated, if valid; for partition of the lot; for relief from obligation to buy the building on the lot, if the lease was valid; for land rent at five hundred dollars a year since October 1, 1926, with interest; for a decree that an undivided half-interest in the building became, at its erection, a part of the real estate held by the trustees; decree that defendant shall render an accounting of all rents, profits and income received by the defendant from the building since the date on which defendant took possession of it, and for physical division of land and building, or if physical division is not practical, that building and land be sold by order of court and the proceeds divided between plaintiff and defendant in such proportion as the court shall determine.

Plaintiff's contention is that the trustees under the will had no right to execute the original lease to Smith, renewal leases and similar leases to lessees who followed Smith; and in particular no right to execute the lease of October, 1921, containing as it did a renewal clause and a clause binding the trustees to purchase the building on the lot if the lease were not renewed; and that even if they had that right, the lease terminated with the termination of the trust, in April, 1926.

It may not be necessary to determine whether the original agreement with Smith was binding on the estate.

What is the limit, not to be overstepped by a trustee in any line of action in connection with real estate given him to "manage and control," may be difficult to determine in a given case, but the language of *Robinson* v. *Robinson*, 105 Me., 68, is suggestive.

The Court say there, "While it is true that under the original theory of a trust the powers and duties of the trustee were confined substantially to holding and caring for the property, it is equally true that the purposes of the modern trust are of a much broader character requiring ordinarily much greater powers on the part of the trustee."

See also, *Bartlett* v. *Pickering*, 113 Me., 96, where power to transform real estate, growing timber, into personal property and sell the same is held implied.

Where no power to lease is expressly given in the will, but trustees are directed to hold, manage and care for the property given them by the testator, to collect the income therefrom, and to expend it for purposes enumerated, the Court say, "in view of the nature of the property and of these obligations, a power to make leases is necessarily implied." *Russell* v. *Russell*, Conn. (1929), 145 Atl., 648.

The Justice below found that the trustees in good faith made an arrangement which resulted in procuring an income from a half interest in a vacant lot which they were forbidden to sell, which was annually taxed, and upon which they, as owners of an undivided half would not have desired to erect a building. Their action was profitable to the estate and when the trust terminated, the *cestui qui trust*, who became the owner of the lot, accepted the situation as it was, recognized the lease and collected rent by virtue of

it to the end of its original term, thus acquiescing in the action of the trustees. That a trustee may give a valid lease even though it runs beyond the period of the trust, provided it terminates within a reasonable time thereafter, is settled law. *Re Caswell*, 197 Wis., 327, 222 N. W., 235 ; *Russell* v. *Russell*, supra ; *Watland* v. *Good*, 189 Iowa, 1174, 179 N. W., 613 ; *Greason* v. *Keteltas*, 17 N. Y., 491 ; *Sweeney* v. *Hagerstown Trust Co.*, 144 Md., 612, 125 Atl., 522.

This lease terminated within six months after the termination of the trust. It is, of course, true that a trustee can not bind his *cestui* to renew a lease nor bind him to purchase buildings, in the absence of a special power to do so, and these trustees did not attempt so to do. Neither the agreement with Smith nor that with any of his successors, including this defendant, attempts to bind the assigns of the lessor.

The lease expired on October 1, 1926.

Had it been such as to have been terminated by the death of the surviving trustee on April first before, and had the plaintiff done nothing recognizing the lease in the interim, it would have been void only as to the excess. *Hubbell* v. *Hubbell*, 135 Iowa, 637, 113 N. W., 512.

But plaintiff assumed the rights of a lessor under it when he acquired the property in July, and can not be heard to deny its validity up to that time. In September he notified defendant that he would not renew the lease, that he denied the right of the trustees to bind him by the agreement to purchase the building, and that he should charge a rent at the rate of five hundred dollars a year for his interest in the land.

At the termination of the lease, provided nothing further occurred, the defendant became tenant at sufferance ; but plaintiff, by his own suggestion that defendant should continue the tenancy, paying rent at the rate indicated, accepted it as a tenant at will, and that remains the status of the parties, modified only by the purchase by defendant of the original Davis share.

True, defendant has paid no rent since October 1, 1926, and no agreement as to rent was reached, but after notice from plaintiff that the rent would be five hundred dollars a year, defendant must be held to have acquiesced in the payment either of that sum or of

a reasonable rental because of the fact that it remained on the property. Its rights were limited to paying reasonable rent or removing the building.

Plaintiff insists that because it did neither, the building is forfeited to the owners of the land and that he now owns a half-interest in common and undivided in the building, but every demand that plaintiff made on defendant would have been satisfied by the payment of rent at the rate of five hundred dollars a year, with plaintiff paying the tax.

A lessee, who erects a building on the land of another with the landowner's permission under a lease which plainly negatives the idea of the building becoming the property of the owner of the land when the lease terminates, has a reasonable time after the termination of the lease in which to remove the building. Plaintiff agrees to this but argues that four years is an unreasonable length of time to continue such occupancy. Ordinarily this would be so, but not in this case. Plaintiff at no time ordered or even requested defendant to vacate the premises. He employed various attorneys. Correspondence ensued between them and attorneys for defendant. Conferences were had and others proposed. Settlement was discussed. Attempts were made to agree on a price for rent. Negotiations as to purchasing plaintiff's interest in the land were entered into and failed. This situation continued down to the filing of this bill. Under these circumstances, it was not unreasonable that the defendant refrained from destroying a valuable property, a three story brick block worth eight thousand dollars, by moving it.

Plaintiff now asks for partition of the property. The lot is twenty-three feet and six inches wide on Water Street and runs back toward Commercial Street about thirty-five feet but not through to Commercial Street, so that there is no rear entrance, and the erection of another building between it and Commercial Street forbids the extension of a building on the lot to occupy its entire depth, an open space for light and air being necessary. To physically divide the lot would leave each owner holding a plot of ground of comparatively little value.

The lot as it is is valuable. A division as plaintiff requests would reduce that value very materially. The only practical and reason-

able division is by means of a sale of the whole lot and a division of the proceeds.

The lease and rights of defendant thereunder terminated on October 1, 1926. Since that date defendant has occupied the lot as a tenant in common, in exclusive possession, but charged with notice that its co-owner would claim rent for his undivided half of the lot.

Defendant should, therefore, be held to pay a reasonable rate from October 1, 1926, until different terms are agreed upon with plaintiff, or the matter is finally disposed of by judgment of the court.

From the record it seems that a reasonable annual charge for rent of plaintiff's half-interest in common and undivided in the lot should be three hundred fifty dollars.

Against this amount the tax paid by defendant in 1927 should be credited. The rent has been demanded each year, beginning October 1, 1927, and is still unpaid.

To the amount of rent accrued as above, less credit for the 1927 tax, should be added interest computed on each annual rent charge at the rate of six per cent per annum from time of demand. The plaintiff is the owner in fee simple of an undivided half of the lot. Defendant is the owner of an undivided half of the lot, and is also owner of the entire building erected on the lot.

*Appeal dismissed.*
*Decree below affirmed.*