## Montgomery Ward & Co. v. Norton's Trustee et al.

(Decided June 22, 1934.)

PETER, TABB, HEYBURN & MARSHALL for appellant.

CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

From a judgment declaring the rights of the parties in a suit brought under the Declaratory Judgment Act (Civil Code of Practice, sec. 639a-1 et seq.) this appeal is prosecuted.

There is no dispute as to the facts. George W. Norton, Sr., died testate on July 18, 1889. So far as pertinent to the issues here involved, his will devised to trustees certain property on the west side of Fourth street, between Green and Walnut streets, in the city of Louisville, Ky., to hold and collect the rents and profits until the death of all of his descendants who were then in being or who might be in being at his death, and until all of their children who survived them should attain 21 years of age. The trustee was directed to keep the property reasonably insured, and, after paying insurance, taxes, repairs, and expenses of the trust, to pay out the net balance as a fund for the support and maintenance of those persons who from time to time during the continuance of the trust would take the property if the

trust were then to terminate. At the termination of the trust, the property was to vest in the same persons and in the same proportions as it would if the testator were then to die intestate and the statute of descent in force at the time he wrote his will were then in force. For a number of years this property was leased to John C. Lewis & Co., but about the 1st of January, 1933, this tenant became financially involved and the lease was terminated. The record discloses that thereafter an exhaustive effort was made by the trustee and several Louisville real estate agents, experts in their field, to obtain a suitable tenant for this property. It remained vacant, however, from the 1st of January, 1933, until the 1st of March of that year. At that time a temporary tenant was procured, but only for a portion of the premises, and at a rental of $500 a month. The carrying charges of the building from the 1st of January, 1933, to the 15th day of May, 1934, including taxes, insurance, and pressing necessary repairs, were almost double that of the income from the property over the same period of time. On the 15th day of May, 1934, the trustee under this will, George W. Norton, Jr., one of the appellees herein, entered into a lease with Montgomery Ward & Co.., the appellant herein. In so far as pertinent to the questions involved in this litigation, this lease provided that its term should be 20 years, with an option on the part of the lessee, Montgomery Ward & Co., to renew for an additional 20 years thereafter. The lease obligated the trustee to expend the sum of $40,000 in necessary repairs and alterations to the building to fit it for occupation and further to advance to Montgomery Ward & Co., a sum not to exceed $7,500, to be repaid by Montgomery Ward & Co. in monthly payments as provided by the lease, with interest at 6 per cent. until the sum advanced was repaid. Montgomery Ward & Co., questioning the authority of the trustee to enter into this arrangement, this declaratory judgment suit was brought against it by the trustee and the beneficiaries in being of this trust estate to have determined the right of the trustee so to do.

The first question presented for determination is whether or not a trustee can enter into a lease which may extend beyond the termination of the trust. It will be remembered that this trust terminates upon the death of the descendants of George W. Norton, Sr., who were in being at his death or at the time of the execution of

his will and until their children who survive them have reached the age of 21 years. The record discloses that the life expectancy of several of these beneficiaries is over 20 years, but it is admitted that it is impossible to determine at this time with any degree of accuracy as to whether this trust will terminate prior to 40 years from the 15th day of May, 1934, the date of the lease and rent agreement. It is of course possible that the trust may not so terminate, while it is equally as possible that the trust may terminate. It is obvious that unless the trustee may enter into a lease which may extend beyond the termination of the trust he will be restricted to a very short-term lease and perhaps in strict legal theory to a lease from day to day, because it is possible, though not probable, that all of the beneficiaries of this trust upon whose lives the existence of the trust depends may be wiped out at one time or over a very short period of time. If the trustee be so restricted, the income value of this property, and indeed of almost any property, will be materially impaired, if not destroyed, for business property can scarcely be rented unless there be some assurance to the tenant of security of tenure over a reasonably long period of time, since a tenant who has established his good will at a certain location does not wish that good will to be imperiled by his being dispossessed of the property with some rival taking his place. In the case of residential property, the exigencies do not of course require such long leases as in the case of business property; yet even here in normal times the tenant usually demands not less than a year's tenancy before he will lease the property. The evidence in this case discloses most satisfactorily that business property of the type of that here present cannot be rented at any reasonably sufficient income producing rental except on a long-term lease, such as the instant one; that the lease here under discussion is the best proposition at present obtainable for the rental of this property; that the appellant, Montgomery Ward & Co., is well qualified to operate a department store, that being the use to which the property here is to be devoted, and is financially sound. In the case of Marshall's Trustee v. Marshall, 225 Ky. 168, 7 S. W. (2d) 1062, 1063, 61 A. L. R. 1365, there was involved the validity of a lease for 99 years by a trustee of a piece of property located on Fourth street, fairly near to the location of the property here in question. The property involved in this Marshall Case was held in a trust which

might or might not have terminated prior to the expiration of this 99-year lease. We upheld the power of the trustee to make the lease. It must be conceded that the express powers vested in the trustee in this Marshall Case were broader than the express powers vested in the trustee in this case; but in the Marshall Case we quoted with approval this from 26 R. C. L. 1301:

"The length of time for which trust property may be leased is determined not only by the authority conferred on the trustee, but by the surrounding circumstances."

Having cited this from R. C. L., the opinion continues:

"In this case the surrounding circumstances show that it is necessary to execute a 99-year lease to properly protect the interest of all the parties, for the old building cannot advantageously be rented, and the new building will not only bring in more revenue, but will make the property much more valuable. In Denegre v. Walker, 214 Ill. 113, 73 N. E. 409, 105 Am. St. Rep. 98, 2 Ann. Cas. 787, following Hale v. Hale, 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247, and Marsh v. Reed, 184 Ill. 263, 56 N. E. 306, the court sustained a 99-year lease on facts no stronger than those shown here under a will which said this:

" 'I direct my said trustees to care for, rent and manage my real property, to pay all taxes, assessments and insurance thereon, and to make all necessary repairs, in their discretion.'

"A like conclusion was reached in Upham v. Plankinton, 152 Wis. 275, 140 N. W. 5, 48 L. R. A. (N. S.) 1004, Ann. Cas. 1914C, 376, where under a like will a 99-year lease was sustained under facts no stronger than those here, the court said:

" 'The power to lease is not restricted to the creation of leaseholds, terminable with the trust power, unless so restricted, expressly or by necessary implication, from the language of the trust.'

"To the same effect is Collins v. MacTavish, 63 Md. 166; 2 Perry on Trusts, sec. 284, and notes; 39 Cyc. 388, and notes.

"The 99-year lease is necessary here to protect the trust and all the authorities sustain such

leases where they are necessary for the protection of the trust. It was the plain purpose of the testator to confer on the trustee full power in the management of the estate for the best interests of the beneficiaries of the trust.''

In the recent case of Russell v. Russell, 109 Conn. 187, 145 A. 648, 654, 63 A. L. R. 783, the Supreme Court of Connecticut, speaking to the same point, said:

''The remaining questions concern the power of the trustees to execute leases of the property. No power to lease is expressly given them in the will or codicil, but they are directed to hold, manage, and care for the property given them by the testator, to collect the income therefrom, and to expend it for the purposes we have before stated; and, in view of the nature of the property and of these obligations, a power to make leases is necessarily implied. The real question upon which the trustees desire advice is as to the length of time such leases may be made to run. In general, trustees having a power to lease must exercise that power reasonably, having regard to the rights of the beneficiaries and those ultimately entitled to the property, the nature of the property, the uses to which it may advantageously be put, and the usual and customary methods of dealing with such property in the locality where it is situated; and this rule applies to the duration of leases they may properly make. A trustee may unquestionably be expressly authorized, by the instrument creating the trust, to execute leases which will or may run beyond the duration of the trust, the legal effect of such authority being to couple to his estate at law a power, and to limit the estate of those entitled at the end of the trust to the extent of any leases so validly executed under it. Authority to execute leases which may run beyond the term of the trust may also be impliedly given, as, for instance, where the power to execute them is necessary to accomplish the purposes of the trust. In the case of a trust whose duration is uncertain because made for the life of some person, or, as in the one before us, until the youngest of testator's children reaches a certain age, to deny the right to make any lease which might run beyond the end of the trust period would in many instances destroy the rentability of the property. On the other hand,

the right of those entitled to the property at the termination of the trust to receive it free of incumbrance or charge is one not lightly to be disregarded and is an important consideration in determining the duration of leases which a trustee may be regarded as having authority to execute. Leases by trustees which will not run beyond the termination of the trust, or if its termination is indefinite in time, beyond its probable duration, are ordinarily within their implied powers, and leases extending beyond those limits may be, if it appears that they are reasonably necessary for the accomplishment of the purposes of the trust or the preservation of the trust property. Unless the necessity to make leases of the latter class is clear, trustees should seek the advice of the superior court as to the period they may be made to run. These principles, we believe, may be deduced from the leading authorities dealing with this question. In re Hubbell Trust, 135 Iowa, 637, 113 N. W. 512, 13 L. R. A. (N. S.) 496, 14 Ann. Cas. 640; Upham v. Plankington, 152 Wis. 275, 301, 140 N. W. 5, 48, L. R. A. (N. S.) 1004, Ann. Cas. 1914 C, 376; Denegre v. Walker, 214 Ill. 113, 73 N. E. 409, 105 Am. St. Rep. 98, 2 Ann. Cas. 787; Sweeney v. Hagerstown Trust Co., 144 Md. 612, 125 A. 522; Wilmington Trust Co. v. Carrow, 14 Del. Ch. 290, 125 A. 350; Hutcheson v. Hodnett, 115 Ga. 990, 42 S. E. 422; St. Louis Union Trust Co. v. Van Raalte, 214 Mo. App. 172, 259 S. W. 1067; Labatut v. Delatour, 54 How. Prac. (N. Y.) 435; 2 Perry, Trusts (5th Ed.) secs. 484, 528; 26 R. C. L. pp. 1301, 1302; Note 14 Ann. Cas. 640.''

It would seem, therefore, that the rule is that trustees do have a power to lease trust property for a period beyond that in which the trust may terminate, at least if the life of the trust is indeterminate and the lease which the trustee makes is with reference to time reasonable under all the facts and circumstances of the case. The facts of the instant case clearly bring it within such rule and authorize the trustee here to make the lease he did. The case of Tierney Coal Co. v. Smith's Guardian, 180 Ky. 815, 203 S. W. 731, 4 A. L. R. 1540, relied upon by appellant, does not militate against these views. In that case we held unconstitutional the act authorizing a guardian to execute a coal lease upon his

ward's property for a period extending beyond the minority of the ward. But in the response to the petition for rehearing, to be found in 181 Ky. 764, 205 S. W. 951, we specifically left open the question of the constitutionality of that act where oil and gas leases were concerned. A reading of the Tierney Case discloses that the court put its conclusions squarely on the proposition that the consideraton of what was the best interests of the ward could not outweigh his right to do as he pleased with his property when he came to his majority. Running all through the opinion is the underlying assumption that the maximum time which the guardianship can exist is definitely known, and that the exigencies of coal leases could be adjusted to such time without utterly destroying the value of the ward's estate. The very fact that the court left open the question of oil and gas leases indicates that it did not mean to take the extreme position that, even where in the very nature of things it would be destructive to the ward's estate not to permit a lease beyond the minority of the ward, such could not be done. In the instant case it is disclosed that there is no hope for a profitable income from the property in question without a long-term lease; further, that no one can say when this trust will terminate. The lease is reasonable in time under all the facts and circumstances involved. Hence the Tierney Case is clearly distinguishable.

The second question for determination is the right of the trustee to expend $40,000 in necessary alterations and repairs to this building to fit it for occupation. This fund has accumulated in the past as a "repair reserve" in the estate's accounting. The trustees under the will were given authority to repair the building, and we regard these repairs and alterations as coming within the express powers so given the trustee.

The third question is as to the right of the trustee to make the advancement of a maximum sum of $7,500 out of the corpus of the trust estate to the appellant. This company is to use the sum so advanced on improvements to the property leased to it. It is a loan to Montgomery Ward & Co., a sound institution of many years standing. In the light of all the facts and circumstances of the case, the use to which the loan is to be put, the financial character of the borrower, its business reputation, and its past record, we are of the opinion that this is an investment which a prudent business man

252

might well make and so one which the trustee is authorized to make.

The judgment of the lower court being in accord with these views, it is affirmed.

The whole court sitting.