MARION L. RAY, *etc.*

*v.*

FRICK COMPANY, *a corporation*

(No. 10212)

Submitted February 7, 1950. Decided February 28, 1950.

Fox, JUDGE, concurring.

*Payne, Minor & Ray, R. E. Stealey,* for plaintiff in error.

*Steptoe & Johnson, Thomas W. Steptoe, Stanley C. Morris, C. W. Flesher,* for defendant in error.

GIVEN, JUDGE:

This unlawful entry and detainer action was instituted in the Circuit Court of Kanawha County for the recovery

of possession and damages for the detention of the western portion of a one-story brick building situated on Virginia Street in Charleston. John C. Huddleston, the owner in fee simple on October 1, 1941, executed a conveyance of the property unto Walter C. Price, Jr., Trustee, which instrument was recorded in the office of the Clerk of the County Court of Kanawha County on November 16, 1942. The wife of John C. Huddleston joined in the conveyance.

On November 24, 1947, the grantor, John C. Huddleston, executed a lease upon the property "for the term of two years from and after the 1st day of January, 1948" to the defendant, Frick Company, who took possession of the property under the lease and retained possession until the end of the two years. On April 5, 1948, Huddleston died and the trustee, pursuant to the provisions of the deed of October 1, 1941, conveyed the property to the plaintiff, Marion L. Ray, Trustee for John Lakin Ray and Olivia Lakin Ray, for a sum greater than the aggregate of the several sums secured, and all beneficiaries named in the trust instrument were paid in full by the trustee. During his lifetime John C. Huddleston retained complete management and control over the property.

After the sale by the trustee the purchaser, plaintiff below, gave notice to the defendant to vacate the premises, in possession having been refused this action was instituted. The question of possession is now moot, the lease having expired by its own terms, but the question as to recovery of damages sued for remains to be decided, the decision of which depends upon the validity of the lease executed by Huddleston to Frick Company. The action was submitted in the lower court upon an agreed statement of facts and that court held that the lease to Frick Company was valid for the full term of two years. Inasmuch as a construction of the deed of trust instrument from Huddleston is necessary we set out the pertinent parts thereof, as follows:

"This deed, made this 1st day of October, 1941, by and between John C. Huddleston and Pearle Fox Huddleston,

his wife, parties of the first part, and Walter C. Price, Jr., Trustee, party of the second part;

"Whereas, the said John C. Huddleston was the husband of Osa Fisher Bonham Huddleston, who departed this life on November 21, 1937, and left a holographic will by which she devised all of the property owned by her, including the real estate hereinafter mentioned and described, to said John C. Huddleston, which said will was duly probated in Kanawha County, West Virginia, * * * in Will Book _____ at Page _____; and,

"Whereas, the said John C. Huddleston wishes to make it certain that the said request will be carried out, and executes this deed for that purpose; and * * *." (Here follows the recital of consideration, the granting clause and description; then)

"The foregoing property shall be held and disposed of by the Trustee, his successors and assigns, upon the following trusts, namely:

"First: To invest, re-invest, and from time to time change the investment of said trust estate, and to receive the rents, issues, profits and income therefrom derived, and to pay therefrom the expenses of investment, taxes, assessments, insurance, and all other necessary and proper charges and expenses incident to the performance of the trusts hereby created, and to pay out the net balance of said income to or for the benefit of said John C. Huddleston so long as the said John C. Huddleston shall live.

"Second: Upon the death of the said John C. Huddleston, to sell all of the said trust estate, and to pay over the proceeds of said sale to the following persons: (here naming the beneficiaries and designating the amounts each were to receive; then)

"To the personal representatives of John C. Huddleston, or to such person or persons as the said John C. Huddleston shall designate in his last will and testament, the balance remaining of the said net proceeds of sale after the foregoing *amount have* been paid.

"The Trustees shall not be liable for any loss or depreciation in the value of the trust estate occurring by reason of error of judgment in making any sale or investment or re-investment, or in continuing to hold in trust any property herewith or hereafter transferred to the Trustee or any investment or re-investment hereafter made, unless he shall have failed to act in good faith or with reasonable care, and the Trustee shall not be required to furnish any bond or security for the performance of his duties hereunder.

"The Trustee shall make sale of the property comprising the trust estate at private sale or at public sale, and with or without notice, and otherwise in such manner as the Trustee may in his discretion deem proper. The Trustee is authorized to make, acknowledge and deliver any and all deeds, conveyances, or other instruments necessary or proper for the accomplishment of the powers given to the Trustee hereby, and no purchaser of any of the trust property shall be obliged to see to the application of any money or proceeds of sale. The Trustee shall be entitled to receive as compensation for his services in the administration of the trust commissions as prescribed by the laws of West Virginia.

"Anything herein contained to the contrary notwithstanding, the said John C. Huddleston reserves the exclusive right during his lifetime to use, lease, develop, manage, improve or operate all of the property comprising the trust estate, and the Trustee shall not during the lifetime of the said John C. Huddleston take possession of the property comprising the trust estate, nor be responsible in any manner for the said property or for the income produced therefrom; provided, however, that the said John C. Huddleston may at any time, in writing, surrender to the Trustee the rights which are reserved to him in this paragraph, and thereupon the rights reserved to the said John C. Huddleston in this paragraph shall cease and the Trustee shall take possession of the property comprising the trust estate, and thereafter the Trustee shall have the exclusive

right to use, lease, develop, manage, improve, operate, hypothecate, mortgage, release, sell or exchange all or any part of the trust estate as hereinbefore provided.

"As long as the said John C. Huddleston exercises the exclusive right to manage the property comprising the estate, the said John C. Huddleston shall keep the said property properly insured and shall pay all the taxes thereon.

"Anything herein contained to the contrary notwithstanding, the said John C. Huddleston reserves the exclusive right during his lifetime to sell, grant and convey all of the property comprising the trust estate upon the following terms and conditions, and the Trustee is hereby authorized to execute proper releases of this trust indenture upon the performance by the said John C. Huddleston of one or the other of the following terms and conditions, namely:

"1. The payment out of the proceeds of sale of the amounts hereinabove provided to be paid to Robert Bonham, Sr., Trustee, Alexander J. Bielski, G. P. Fisher and Florence Bielski Fisher, Trustees, Henry Fisher, William Fisher and Charles S. Fisher; or,

"2. The assumption by the purchaser of the payment of the said amounts to Robert Bonham, Sr., Trustee, Alexander J. Bielski, G. P. Fisher and Florence Bielski Fisher, Trustees, Henry Fisher, William Fisher and Charles S. Fisher upon the death of the said John C. Huddleston, which said payments are to be secured by a lien which is the first lien upon the property comprising the trust estate. "* * *.

"No part of any of the amounts herein provided to be paid shall be liable for the debts of any beneficiary hereunder, nor shall the same be subject to seizure by any creditor of any beneficiary under any writ of any proceeding at law or in equity, and no beneficiary hereunder shall

have any power to sell, assign, transfer, encumber, or in any other manner to anticipate or dispose of his or her interest in the trust estate.   * * *."

The plaintiff contends that the grantor Huddleston by the terms of the trust instrument reserved only a life estate and that the lease to the defendant had no validity or effect after the death of Huddleston. She relies upon cases like *Shufflin* v. *House,* 45 W. Va. 731, 31 S. E. 974; *Jones v. Shufflin,* 45 W. Va. 729, 31 S. E. 975; and *Holden* v. *Boring,* 52 W. Va. 37, 43 S. E. 86. These cases are authority for the proposition that generally a life tenant cannot make a valid lease for a period which might extend beyond the term of the tenancy. We are aware that courts of some states hold otherwise. See *Holland* v. *Bogardus-Hill Drug Co.,* 314 Mo. 214, 284 S. W. 121; *Montgomery Ward & Co.* v. *Norton's Trustee,* 255 Ky. 244, 73 S. W. 2d 41; *Russell* v. *Russell,* 109 Conn. 187, 145 Atl. 648; *North* v. *Augusta Real Estate Association,* 130 Me. 254, 155 Atl. 36. As to whether exceptions to the rule adopted by this Court should be recognized we do not decide, for we have concluded that the grantor in the trust instrument here involved reserved more than a life estate.

In construing the trust instrument we must look to all of its provisions and give effect to each such provision, unless to do so would violate some positive rule of law. *Bartlett* v. *Petty,* 93 W. Va. 608, 117 S. E. 551; *Maddy* v. *Maddy,* 87 W. Va. 581, 105 S. E. 803; *McConaughey* v. *Holt,* 102 W. Va. 290, 135 S. E. 282. There is not present in this case any question as to any attempted fraud against the beneficiaries in the execution of the lease, nor is there present any question as to the unreasonableness of the term for which the lease was to run. And it is not questioned that a grantor in a trust instrument such as is here involved may, expressly or impliedly, reserve unto himself the right and power to execute a lease which may extend beyond his lifetime.

It is clear that the dominant purpose of the trust instrument was to secure the payment of certain sums to the

named beneficiaries. Full powers were given to the trustee for that purpose, including the right to sell the property. All net proceeds were to be used in the payment of the sums secured to the beneficiaries or returned to the personal representative of John C. Huddleston or to such person or persons as the said John C. Huddleston should designate in his last will and testament. The trustee could sell at either private or public sale and without any notice of such sale. All of these powers, together with absolute possession of the property, were reserved by the said John C. Huddleston in this language: "Nothing herein contained to the contrary notwithstanding, the said John C. Huddleston reserves the exclusive right during his lifetime to use, lease, develop, manage, improve or operate all of the property comprising the trust estate and the trustee shall not during the lifetime of the said John C. Huddleston take possession of the property comprising the estate, * * *." Further indicating the intention of Huddleston to retain full power over the property is the provision to the effect that no beneficiary could sell, assign or encumber, or in any manner anticipate his interest, and the provision requiring the trustee to execute proper releases of the trust indenture upon certain conditions. Keeping in mind the dominant purpose of the trust instrument, and applying the above mentioned principles of law to these facts, it is clear that the grantor, John C. Huddleston, reserved in the instrument under consideration the right and power to execute the lease unto the defendant, and the Court so holds. It follows that the judgment of the lower court was clearly right and should be affirmed.

*Affirmed.*

Fox, Judge, concurring:

I concur in the result in this case, but I would base our ruling on a different theory from that followed in the opinion. In my judgment, the conveyance executed by John C. Huddleston to Walter C. Price, Jr., trustee, dated

October 1, 1941, was, in legal effect, a mortgage to secure the beneficiaries therein the sum of $15,500.00. Under the terms of the said instrument, the trustee was required to make sale of the property conveyed upon the death of John C. Huddleston, and pay certain sums of money to the beneficiaries aforesaid. The balance remaining in his hands, after satisfying the sums due the beneficiaries, was to be paid over to the heirs or devisees of John C. Huddleston. In these circumstances, I think the said conveyance should be treated as a mortgage. When we do this we have no difficulty in sustaining the lease here in question, when we consider the provisions of the conveyance that Huddleston had the "exclusive right during his lifetime to use, lease, develop, manage, improve or operate all of the property." But for this provision, the general rule that a lessee of mortgaged property is subject to an existing mortgage would probably control. 36 Am. Jur. 830.

If we treat the interest of John C. Huddleston in the property involved as anything else than that of a mortgagor, we are met with the question of just what estate, if any, he had in said property. It is certain that his estate was, strictly speaking, not that of an ordinary life tenant, because he had parted with the legal title to the property, and only reserved certain rights to possession, rents and other controls during his lifetime, and the right in his heirs or devisees to any excess derived from the sale of the property by the trustee beyond the sum secured in the deed he executed. It is doubtful whether this created any specific estate in the property. In my opinion, his interest was that of a mortgagor because, upon his payment of the sums due the beneficiaries under the deed aforesaid, all of the claims of Price, trustee, were intended to end, and a required reconveyance of the property to Huddleston, or a valid release of the mortgage would, of course, make him the owner of the property in fee simple. In my opinion, Huddleston continued to be the equitable owner of the property until his death, subject to the deed he made to Price which I would treat as a mortgage.

The question of the right of a life tenant to execute a lease for a term which may extend beyond his death is mentioned in the opinion of this case. I do not want to be understood as questioning in any way the rule laid down in the cases of *Shufflin* v. *House,* 45 W. Va. 731, 31 S. E. 974; *Jones* v. *Shufflin,* 45 W. Va. 729, 31 S. E. 975; and *Holden* v. *Boring,* 52 W. Va. 37, 43 S. E. 86. In a case where a life tenant executes a lease, I think the lease ends at his death. I am not in accord with some courts that a life tenant may execute a lease which may expire within a reasonable period after his death. If we follow that view, we are met with the question of what is a reasonable time. It is well known that in some instances, leases are made for fifty years or even more, all depending on the character of business for which the property is leased, the amount of improvements necessary to develop the same for the purposes leased, and many other considerations. Except in cases of contingent remainder, a lessee of property can always secure the assent of the remainderman, and thus avoid the risk attendant upon the termination of a life estate. It is realized, of course, that to lease property advantageously, it is sometimes necessary to execute leases which may extend, and probably are contemplated to extend beyond the life of the life tenant; but difficulties arising from such situations are small compared with those which would arise if we adopt the rule that a life tenant may make a lease which extends for a reasonable time beyond his death. Nothing that we could do would lead to more uncertainty as to the rights of lessees and lessors, with respect to all types of property, than to establish such a rule. I do not understand that the opinion in this case does establish such a rule, but the question has been raised, and I think warrants some discussion.